struction. In view of the facts in this record, it was incumbent upon the plaintiff to prove that the indorsement was made by Blair, and that he had authority, and the admission of the note without evidence of the plaintiff's title was error.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.

## George T. Swimm v. George C. Bush.

*Contract of sale not ordinarily avoided for depreciation of value on the purchase.* A contract of sale cannot usually be avoided for an undervaluation, or because a party in bargaining has sought to abate and depreciate the price by the common bantering between buyer and seller. Where parties stand on an equal footing, the expression of opinions as to value will not usually be considered so material that misstatements will amount to fraud.

*Concealment of material facts, coupled with misrepresentations that prevent investigation, fraudulent.* But where the purchaser, residing near land in Michigan, had full knowledge of its situation and value, and the owner, residing in Eastern Pennsylvania, had no adequate knowledge on the subject, and the former procured letters of recommendation from persons in the confidence of the latter, and obtained a contract of sale at much less than the value of the land, by deceiving him as to the value, and by representations that were designed to prevent, and did prevent, any such delay as would have enabled him to inform himself correctly, the agreement was held voidable for fraud, and the court refused to enforce it.

Where one induces another to abstain from seeking information, even mere concealment of material facts may become fraudulent, and a party is held strictly accountable for all of his representations under such circumstances.

*Deceit: Fraud.* Relief will not be refused to the vendor in such a case, merely because a sharp business man might not have been deceived. Where a person intending to commit a fraud practices such arts as are designed to overreach the person he deals with, and the latter, without fault or unreasonable neglect, is actually defrauded, redress will not be denied to the party injured.

*Heard May 4. Decided May 9.*

Appeal in Chancery from Shiawassee Circuit.

The facts appear in the opinion.

*Gould & Lyon,* for complainant.

*L. Walker* and *A. Russell,* for defendant.

CAMPBELL, CH. J.

The bill is filed to enforce the specific performance of a written contract for the sale of a farm in the city of Owosso. The defense rests on the ground that the contract was obtained fraudulently and is unconscionable.

The facts, as we deduce them from the testimony, were in substance these : Bush is a clergyman, residing in Eastern Pennsylvania. He had owned the property for many years, and it was in the hands of a tenant. Not far from the end of May, 1868, four persons had written to Bush to negotiate for .the purchase of the farm, but nothing had been done to close with them. Early in June, Swimm ascertained that various persons were desirous of buying it, and immediately left home and went down to see Bush, and obtained the contract sued upon, June 8th. He then returned home and got upon the land, although the tenant also remained there and objected. The contract was in consideration of three thousand dollars, viz : four hundred dollars paid down, and one hundred dollars to be paid on the exchange of deed, and securities for the balance, which was to be in thirty days. Nothing was said in it about possession. A few days after the contract was made, Bush received letters satisfying him that the property was worth more than he had sold it for, and he wrote two consecutive letters to Swimm desiring to be released, to which Swimm paid no attention beyond hastening to take possession. In July, Bush visited Owosso, and this suit was commenced on the 13th, not very far from the time of his arrival. We leave out of consideration many minor facts which do not affect the rights of the parties.

The defense rests upon the claim that Swimm, being in possession of better knowledge of the value and surroundings of the property than Bush, took means to secure the confidence of the latter, and by his misrepresentations and urgency induced him to make the sale at an under value, and thereby defrauded him.

The facts are within a narrow compass, and we are not compelled to pass upon any very complicated questions, either of law or fact. It is not claimed that a sale will be disregarded merely because of an undervaluation. And it is not claimed that the ordinary banter and abating of prices between buyer and seller, when acting on an equal footing, can usually have much weight in such a controversy. The decision must rest upon the presence or absence of such a state of facts as, under all the circumstances, renders the bargain unconscionable. We think such facts existed here.

There is a good deal of difference of opinion among the witnesses as to the value of the property. We have no doubt it was worth at least a thousand dollars more than Swimm paid for it, and we think it clear he thought so. His hasty and clandestine journey to anticipate the other purchasers, and his haste to seize a foothold on the land, go to corroborate strongly the other proofs of value. It is evident he expected to make a very advantageous bargain. It is also evident that Bush had no adequate knowledge of the present value of the farm, or of its prospective value. A visit to Owosso, or even a full knowledge of the value of the land three years before, would give no means of testing its present value, and it is quite clear he did not know it. Swimm had, then, all the advantage of superior knowledge, and knew that he had it. His statements and his conduct must all be viewed from this standpoint. And a willful misstatement of facts or opinions of value, made under such

circumstances, and made with a design to deceive, and actually deceiving Bush to his prejudice, would be fraud in law.—*Picard v. McCormick, 11 Mich. R., 68.*

We think that the course taken by Swimm was such that it was eminently calculated to deceive Bush, and that the latter cannot be regarded as at fault in believing him. He obtained from a reputable member of the bar, who wrote it in good faith, a letter of introduction, stating that the writer, at the request of Bush's sister, had been looking for a purchaser of the farm, and that Swimm would, as he thought, buy it and pay its value, and he recommended him as a man of wealth and reliability. Swimm also took a letter from Mr. Bloss, a brother-in-law of Bush.

Upon presenting these letters of introduction, Swimm inquired the price of the land, and was answered, four thousand dollars. He said if that was the price there was no use talking; that he hoped to buy it for twenty-six or twenty-eight hundred dollars. Bush then showed him the four letters of inquiry, and asked him about the writers· One of them he said he did not know; which appears to be true. One he gave Bush to understand was not responsible. The other two letters, he said, were written in his own behalf. The statements concerning these three were not correct. Bush went on to question him about the farm and about Owosso. He thereupon gave Bush to understand that Owosso was not flourishing, but was being injuriously affected by Corunna; that property was declining, and that the farm itself was in very bad condition, as he described it; which was not a very great exaggeration. He, when asked concerning the value of the land, said it was not worth four thousand nor three thousand dollars, and that he had not expected to pay more than twenty-eight hundred dollars, but that he would give three thousand, as his wife was born on it and had an affection for it, and an offer of

three thousand had been made for it by one of the letters written by a Mr. Martin, the person he said he did not know. Bush desired to take the matter of sale into consideration, and said he would talk it over with his wife (who was then in New Jersey) on her return. Swimm urged him · to go at once with him and he would bear the expense. They went at once and saw Mrs. Bush, and the bargain was concluded the same day.

In all of this transaction it is very plain, from a review of the evidence, that Bush was induced by the letters he brought to regard Swimm as a reliable and veracious man, who was acquainted with the facts necessary to form a judgment upon, and would not deceive him. It is just as clear that Swimm knew this, and gave him the answers and made the representations in order to induce him to believe he was getting the outside value of the land, and that it would not be safe to lose a good offer. The representations were of the greatest materiality, and referred to the matters on which any sensible man would found his conclusions. The sale was the result of nothing but the urgency and deceit of Swimm, and such statements coming from a man of undoubted character (as Swimm was naturally assumed to be under the circumstances) might have deceived a man of more experience than Bush. The reason he gave for being willing to pay a larger price than his real estimate of the value, was one which appealed very naturally to the better feelings, and would have considerable weight in confirming the veracity of the purchaser. This reason was without any foundation, as Mrs. Swimm was not born there.

Except as to the condition of the land,—which was mainly important on the supposition that the dead state of Owosso rendered the land valueless except for farming,—the whole tenor of the representations was contrary to fact.

Owosso was improving rapidly, and not stagnant or

retrograding. The land was in demand and was worth more than four thousand dollars, and the purchaser knew this, and went down to Pennsylvania on purpose to prevent other offers from reaching Bush, and used such arguments and made such statements as he found were best adapted to force him into hasty action, for fear of the danger of delay. He induced Bush to abstain from that deliberation which would have inevitably defeated the scheme. And where a party is induced to abstain from informing himself, even material concealment is often sufficient to create fraud, without active misrepresentation.

It does not avail in such a case that sharp business men might not have been so readily deceived. Possibly they might not. But the law does not seek to encourage the practicing of cunning arts upon those who are not well qualified to resist them. The character and business capacity of the person operated on form a very important element in fraud. If the effect is produced, and is intended to be produced, that is enough. There can be no splitting of hairs to sustain unconscionable action. Every one is expected to use reasonable diligence in resisting deceit, but each case must depend on its own facts, and this case shows no fault in Bush. He was obliged to depend on information, and he sought it from what he had reason to believe was a reliable source. No man of sense would have done as he did without being deceived.

We do not feel called upon to lay down any rule as to how far smartness may go without crossing the legal boundaries of fraud. Neither are we disposed to consider the somewhat unprofitable subject of the impeachment of witnesses. The circumstances which are most important are not left at all in doubt, and there can be no reason for refusing relief in this cause to the defendant, except upon the theory that he was in fault in allowing himself to

be overreached in the bargain.  We do not think he contributed enough to his own loss to be subject to this criticism.

The decree below must be reversed, and the bill dismissed, with costs of both courts.  If, after the taxation of costs, any balance of the four hundred dollars advanced by Swimm remains in excess of the taxation, defendant must pay over such balance within thirty days after demand, or may deposit it with the clerk of this court for the benefit of complainant.

The other Justices concurred.