ARTA MORGAN, APPELLEE, V. OLIVER P. DINGES, APPELLANT.

1. **Vendor and Vendee**: SALE: MISREPRESENTATIONS AS TO VALUE OF PROPERTY. Where a vendor and purchaser stand on an equal footing, the expression of opinions as to the value of property will not usually be considered so material that misstatements will constitute fraud. Where, however, the purchaser resides near the property, and has knowledge of its value, and the owner is a resident of another state, and has no knowledge on that subject, statements of the purchaser representing the property to be greatly beneath its true value, and that the vendor's title has been conveyed by sale for taxes, will be sufficient to avoid the deed given to such purchaser.

2. ——: ——: CANCELLATION OF DEED. Where a person desiring to purchase real estate knows its value, and when asked by the vendor, a resident of another state, and who has no knowledge of such value, as to the worth of such property, designates a sum greatly beneath its worth, as he well knows, and such statement is relied upon by the vendor and a sale effected, it may be sufficient to authorize a cancellation of the deed at the suit of the vendor.

3. ——— : ——— : FRAUD BY VENDEE. If such purchaser does.
any act or makes any declaration with the intention of mis-
leading the seller, and preventing him from ascertaining the
real situation of the property, and at the same time conceals
from him a fact or facts which he knows to be material, he is
guilty of a fraudulent deception.

APPEAL from the district court of Lancaster county.
Heard below before CHAPMAN J.

*Sawyer & Snell*, for appellant, cited : *Bowman v. Page,*
11 Wis., 315. *Fagan v. Schultz*, 73 Ill., 529. Pomeroy
Eq. Jur., Secs. 901-903. Benj. Sales, Secs. 668-672. 2
Kent Com., 487. *Gomerly v. Gymnastic Association*, 13.
N. W. R., 242. *Fish v. Cleland*, 33 Ill., 238.

*Billingsley & Woodward* and *G. M. Lambertson*, for
appellee, cited : Story Eq. Jur., Sec. 246. Fry Specific
Performance, Sec. 277, note 1. *Turner v. Harvey*, 1 Jacob
Eng. Ch., 178. *Livingston v. Peru Iron Co.*, 2 Paige,
390. *Laidlaw v. Organ*, 2 Wheat., 178.

MAXWELL, J.

The plaintiff alleges in her petition that she resides in
Denver, Colorado, and has been absent from Lincoln since
1874; that she was the owner of lot two, in block thirty-
one, in the city of Lincoln, which lot was then worth be-
tween six and eight thousand dollars ; that for the purpose
of inducing her to sell said lot for a wholly inadequate
consideration, Dinges called on her at her home in Denver,
with his attorney, and concealed from her the true value
of the lot, and falsely and fraudulently represented that
the value of the lot, exclusive of the house, was not more
than two or three hundred dollars ; that her title had been
extinguished by reason of a tax deed, but in order to clear
up a flaw he wished her signature to a deed as a simple
formality ; that the attorney of Dinges, at his instigation.

and in his presence, professionally advised her that under the Nebraska law and decisions, her title had been extinguished by the tax deed, when both Dinges and the attorney knew that such was not the fact; that Dinges falsely represented that he was the holder of said tax title, and that he would bring suit against her and put her to great trouble and expense, and that she would be arrested and brought to Lincoln, unless she consented to give him a deed to the lot for one hundred dollars; that on account of sickness in her family she had no opportunity to consult with an attorney as to her rights; that she was wholly ignorant of her rights, except as advised by Dinges and his attorney; that she had no knowledge of the real value of her lot, and had heard nothing concerning its value for a number of years; that she was distressed by sickness in her family, by poverty, and the need of money, and, relying wholly and implicitly upon the statements of Dinges and his attorney, for one hundred dollars she executed a warranty deed, with full covenants except as to taxes; that Dinges is not, and never was, the owner of a tax title to said lot, and never had any contract or arrangement by which he could buy in said tax title, if one existed; that if there is any tax title to said lot, the same is void, and her right of redemption not extinguished; all of which was well known to Dinges and his attorney at the time they told her to the contrary; and that all the statements made by Dinges were made with the intent to cheat and defraud her out of her property, by taking advantage of her ignorance and poverty, want of knowledge of the value of the lot and her rights therein, and her distress of mind consequent upon long sickness in the family.

The defendant filed a general demurrer to the petition, which was overruled, to which the defendant excepted and now assigns the overruling of the same for error.

The demurrer was properly overruled. Where parties stand on an equal footing, expressions of opinion as to

18

the value of certain property will not usually be considered so material that misstatements will constitute fraud. But where the purchaser resides near the property in this state, and has full knowledge of its situation, and approximate value, and the owner resides in another state, without any knowledge on that subject, expressions of opinions as to value by such purchaser, which he knows to be much beneath the true value of the property, and statements made by him, that the owner's title has been abrogated by reason of a sale of the property for taxes, will be sufficient, where the property was purchased for a grossly inadequate consideration, to set aside the deed. The petition, therefore, does state a cause of action.

Upon the overruling of the demurrer the defendant filed an answer, in which he admits the execution of the deed; second, alleges that the lot had no market value; third, that at the time of said purchase said lot was in the adverse possession of one Herman Koenig, who claimed to be the owner of the same by reason of a tax title issued in 1875, and adverse possession thereunder for more than ten years.

The plaintiff filed a reply which it is unnecessary to notice.

The testimony tends to show that early in February, 1887, Herman Koenig was in possession of the lot in question under a tax deed. The testimony, however, fails to show that Mr. Koenig had been in possession a sufficient length of time to give him title by adverse possession. In fact it shows that he had not had such possession for the requisite time. The defendant applied to Mr. Koenig to purchase the lot, and was informed by him as to the state of his title, and it was verbally agreed that he would sell his interest to the defendant for the sum of two thousand dollars, it being understood that the legal title was in the plaintiff. The testimony shows that the lot at this time was worth from twenty-five hundred to six thousand dol-

lars, the fair value apparently being about five thousand dollars. The defendant thereupon commenced a search for the plaintiff, and after considerable difficulty found her in Denver. At Denver the defendant employed an attorney and called upon the plaintiff to endeavor to purchase the lot in question. The plaintiff testifies that the attorney, in the presence of the defendant, said, "his (the defendant's) deed was better than mine; my deed was no good whatever; that after the lot was sold for taxes, that I couldn't redeem it or claim it, that all he wanted was my signature to his deed; that he just wanted a link in there and that my deed wasn't any good anyway, and that he wanted my signature. He wanted to know why I hadn't redeemed it; I told him that I had been sick, and that sickness was the reason why I hadn't redeemed the property, and that I haven't the money." He said, " That was no excuse. Do you know what I can do with you for not clearing up this title? I can arrest you and take you to Lincoln, and make you clear up this tax title, and it will cost you more than the property is worth. We can put off this suit from time to time till you won't gain anything."

The attorney testifies on that point: "I first introduced myself to the plaintiff, Mrs. Morgan, as an attorney from the office of Patterson & Thomas, and introduced Mr. Dinges, the defendant, to her, and told her that we wanted to have a talk with her about a certain lot in the city of Lincoln of which she *was at one time the owner*. She said that she had been the owner of the lot about which we were speaking, and I then told her that I had been informed that she failed to pay the taxes on that lot for a long space of time, I think I said for ten or fifteen years, and I also told her that, if that was the case, in all human probabilities somebody had the title to that lot through a tax sale. She told me that it was true, that she had not paid the taxes on the lot for a long time, but said that she had been unable to do so on account of sickness

in her family and on account of lack of money to pay the taxes. I told her that of course that was very unfortunate, but at the same time in law that would be considered no excuse for not paying the taxes, and that as I had before stated, the property had in all human probability been sold for taxes and a deed given, and that what we wanted to know was the least she would take to give a deed for whatever interest she might have remaining in that property in order that the owner of the tax sale might have a clear title of record. She stated to us that she had heard through a gentleman in Lincoln, I think his name was Brown, that the property had been sold for taxes, and she further said that she received word from Lincoln that it would be necessary for her to come there in order to reclaim the property."

He further testified :

"Q. Did you at any time or in any manner inform or threaten the plaintiff that if she did not sell her interest in this lot that you could arrest her and take her to Lincoln, and make her clear up this tax title, and that it would cost her more than the property was worth?

"A. No, I did not. I told Mrs. Morgan, however, that the owner of the tax title could bring a suit against her to compel her, or rather not to compel her, but to clear a cloud from his title by reason of the fact that the record showed her to be the owner in fee simple. And I did say to her at that time that she would be put to considerable cost and expense to defend that suit, in case the holder of the deed should bring such a suit. I would like to continue that answer, but I never in any way or manner said or intimated to Mrs. Morgan that it would be possible, under any circumstances or conditions, to arrest her or to bring any criminal charge against her whatever.

"Q. Was anything said by either you or the defendant, at any conversation with the plaintiff, in regard to her arrest, or of the power of the defendant to compel her to go to Lincoln, Neb.?

" A.   Nothing, except as I have already stated, that I told her a suit could be brought to clear a cloud from the title."

He also testified as follows:

" Q.   Did either you or the defendant state to Mrs. Morgan what in your opinion the lot was worth at this time?

" A.   No, I think not.   Mrs. Morgan asked us what we thought the property was worth, and not knowing anything about it myself I could not tell ; but Mr. Dinges, the defendant, told her that some time ago, I think he said about two years and a half ago, the property had been sold for eight or nine hundred dollars, I am not sure which now.

" Q.   Did either you or the defendant inform or advise the plaintiff that her interest in the property was of no value whatever?

" A.   Not in that way.   I did tell Mrs. Morgan that if no taxes had been paid on the place by her for the past fifteen years, that in all human probability she had no more title to the premises than I have."

The testimony also shows that the plaintiff was unaccustomed to the transaction of business, and knew nothing of the real value of this property.   She states, and it is apparent from the record, that she had been unable, from poverty, to pay the taxes on the lot in question ; that her children had been sick with the measles, and she lived at least one mile from the business portion of the city of Denver and from an attorney's office; that her children were too young to leave alone, and that her husband was absent during the day in the employ of the railroad company, and personally knew nothing of the value of the lot.   The plaintiff seems to have supposed that the attorney who appeared with the defendant was a member of the law firm of Patterson & Thomas, and claims to have had great confidence in his statements.   However this may be, the de-

fendant and his attorney, when asked by the plaintiff as to
the value of the lot, concealed the fact as to its true value,
and by indirection and innuendo in effect stated that her
interest had passed by the tax sale and was of little or no
value whatever. These statements, so far as this record
shows, were false. The amount of taxes due on the lot
was somewhat in excess of three hundred dollars, but no
valid tax deed has been shown. The statements, therefore,
were wholly unathorized. The case in some of its facts is
similar to that of *Swimm v. Bush*, 23 Mich., 99.

In that case the defendant owned a farm near the city
of Owosso; the plaintiff resided near said farm, and was
well acquainted with its value. Bush was a resident of
Pennsylvania. In May, 1868, four persons had written
to Bush to negotiate for the purchase of the farm, but
nothing had been done to close with them. Early in June
of that year Swimm went to see Bush, and when asked
concerning the value of the land, said it was not worth four
thousand dollars nor three thousand dollars, and that he had
not expected to pay more than twenty-eight hundred dol-
lars, but that he would give three thousand, as his wife
was born on it and had an affection for it; an offer of three
thousand for it had been made in one of the letters written
by one Martin to Bush. Swimm purchased the farm for
three thousand dollars, paying four hundred dollars down,
with a provision for adequate security upon the making of
the deed. The testimony showed the land at that time to
be worth four thousand dollars, as Swimm well knew.
The court set the contract aside, as having been obtained
by fraud, and taxed all the costs to Swimm. The court
say, p. 10 : " It is just as clear that Swimm knew this, and
gave him the answers and made the representations in or-
der to induce him to believe he was getting the outside
value of the land, and that it would not be safe to lose a
good offer. The representations were of the greatest ma-
teriality, and referred to the matters on which any sensible

man would found his conclusions. The sale was the result of nothing but the urgency and deceit of Swimm, and such statements coming from a man of undoubted character (as Swimm was naturally assumed to be, under the circumstances) might have deceived a man of more experience than Bush."

In *Turner v. Harvey*, Jacob's R., 178, Lord Eldon adverts to the general principle, "that parties dealing for an estate have a right to put each other at arms-length; and that if the purchaser knows that there is a mine upon the estate, and the vendor makes no inquiry, the former is not bound to give him information thereof." He says, however, "Very little is sufficient to affect the application of that principle; if a word, if a single word be dropped which tends to mislead the vendor, that principle will not be allowed to operate."

On commenting on this rule in *Livingstone v. Peru Iron Co.*, 2 Paige, 393, Chancellor Walworth says: "Certainly if the purchaser does any act, or makes any declaration, with the intention of misleading the seller and preventing him from ascertaining the real situation of the property, and at the same time conceals from him a fact which he knows to be material, he is guilty of fraudulent deception."

To the same effect are *Haygarth v. Wearing*, L. R. 12 Eq., 320, 328. *Rawlins v. Wickham*, 3 De G. & J., 304; S. C., 1 Giff., 355. *Martin v. Jordan*, 60 Me., 531. *Coon v. Atwell*, 46 N. H., 510. *Simar v. Canaday*, 53 N. Y., 298. *Van Epps v. Harrison*, 5 Hill, 63. *Reid v. Flippen*, 47 Ga., 273. *Morehead v. Eades*, 3 Bush, 121. *Sieveking v. Litzler*, 31 Ind., 14. *Harvey v. Smith*, 17 Id., 272. *Davis v. Jackson*, 22 Id., 233. *McFadden v. Robinson*, 35 Id., 24. *Allen v. Millison*, 72 Ill., 201. *Neil v. Cummings*, 75 Id., 170. *Fairbault v. Sater*, 13 Minn., 210. *Gifford v. Carvill*, 29 Cal., 589. *Cruess v. Fessler*, 39 Id., 336.

The defendant, while claiming to the plaintiff that she

had no title, showed his insincerity by obtaining from her a warranty deed with covenants against all incumbrances except taxes and tax liens. This deed was prepared by his attorney, evidently with his consent and concurrence. The judgment of the district court having been for the plaintiff, it is clearly right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.