W. P. STACKPOLE ET. AL., APPELLANTS, VS. WILLIAM S. HANCOCK, ET AL., APPELLEES.

WILLIAM S. HANCOCK ET AL., APPELLANTS, VS. W. P. STACKPOLE, ET AL., APPELLEES.

1.   Where the parties to a chancery suit, after a plea is filed and set down for argument, fail to bring it on for hearing, but proceed to take testimony as to the merits of the plea, and further bring the case on for final hearing, the decree rendered will not be reversed unless there is error on the merits.

2.   Ordinarily the mere expression of an opinion as to value, or a statement as to the uses for which real estate is wanted, will not, unless used as part of fraudulent means to mislead and prevent an examination of the property, suffice to set aside a deed thereto on the ground of fraud.

3.   By the rule of the common law a vendee who has information of a mine on the land of another of which the latter is ignorant, is under no legal obligations to disclose such fact in mak-

ing the purchase. Under such circumstances the vendee may remain silent and not disclose facts in his knowledge, or answer inquiries as to such facts, but if he undertakes to do so, he must disclose the whole truth, without concealment of material facts, and without doing anything calculated to prevent an investigation on the part of the vendor, especially if he does not reside near the land and the vendee does.

4. While a vendee, under the circumstances stated in the preceding head note, may remain silent and purchase, yet a very little is sufficient to affect the application of this principle, and statements ordinarily regarded as an expression of an opinion, may be considered as sufficient when calculated to mislead and prevent an examination of the property on part of the vendor.

5. Where an answer in chancery contains the usual general denial found in such a pleading, it is sufficient to make an issue on material allegations in the bill not admitted, and to which no direct response is made, and as to them there must be at least a preponderance of sustaining proof.

6. The separate answer of one defendant cannot be used as proof against the others in the absence of showing that he occupied such a relation to them as to bind them by his representations.

7. A bill charging an agreement and combination on the part of several defendants to fraudulently obtain a deed to them to real estate, will be sustained by proof of the the fraudulent representations, of one in securing the deed, if in fact he has acting for the others, though they did not authorize such representations, and did not know of them when the deed was made to them.

8. Where some of the representations made by a vendee in procuring a deed to land are true, and some are false and sufficient to set aside the sale, and it appears that the latter might and will influence the vendor in the disposition of the land, the sale should be cancelled.

9. Under Chapter 3681, Acts of 1887, when land is returned to the assessor by an owner and the assessor acts upon the return in assessing the property, it must be assessed to the party making the return. Under such circumstances an assessment to a party not the owner and not the one making the return, is void.

Appeal from the Circuit Court for Hernando County.

*Statement.*

The amended bill, filed by appellees W. P. Stackpole, James Connor, Rosanna Connor, Eugene Connor and wife Johanna, and W. J. Connor, against W. S. Hancock, John J. Hale, John M. Taylor and C. C. Keathley, and George T. Ross, alleges that complainants were on and before the 1st day of June, 1890, seized in fee and possessed by the W. 1-2 of S. W. 1-4 of Sec. 12 Tp. 22 S., R. 20 E., situated in Hernando county, the said W. P. Stackpole being the owner of an undivided half interest in said land and the other complainants being the owners of the other undivided interest as heirs at law of one John Connor, deceased. The object of the bill is to cancel certain quit-claim conveyances made by complainants to defendant W. S. Hancock, a quit-claim deed from the latter to the defendants, Hale, Taylor and Keathley, and certain tax deeds acquired and held by the defendants. The grounds upon which the cancellations are sought are stated by the bill as follows: "Your orators and oratrixes being so seized and possessed of said lands were approached by the defendant William S. Hancock, on or about the 1st day of June, 1890, and solicited by him to sell their respective interests therein, which your orators and oratrixes were willing to do provided that the sum offered by the said Hancock was as much as said lands were then worth in the market, but not knowing the then market value of said lands they relied entirely upon the representations of him, the said Hancock, for a truthful statement of the market value thereof; that thereupon the said Hancock represented and asserted to them that said lands were

utterly valueless except for the small amount of pine timber standing thereon; that there was an English syndicate which intended to erect a mill in the neighborhood of said lands but would not do so unless it could purchase at least one thousand acres; that he, Hancock, owned some adjacent lands and by obtaining the lands of your orators and oratrixes he could make up the one thousand acres and thus effect a sale of his own lands to the said syndicate; that there were no deposits of phosphates—then recently discovered in Florida—or other valuable deposits of minerals on said lands, and that save for the timber aforesaid would command no price and was utterly unsalable in the market; that said lands had been sold again and again for taxes, and tax deeds unnumbered clouded their title; and that the sums aggregating $1,000, which he then offered them was really more than said land was then worth or would sell for in the market.    That upon these representations of said Hancock on which your orators and oratrixes relied as being truthful and free from deception, and by which alone they were induced to sell said lands to him, your orators and oratrixes did, for the aggregate sum of one thousand dollars so offered as aforesaid, execute to the said Hancock quit-claim deeds to the said lands, viz: your orator William P. Stackpole on the 2nd day of June, A. D. 1890, executed a quit-claim deed to said Hancock for his interest in said lands for the sum of two hundred dollars, and in order to obtain the signature to said deeds of your orator for said nominal consideration, the said Hancock first induced your orator to drink freely with him, Hancock, of spirituous liquors, and your said orator thereby became intoxicated and in that condition was made to execute said deed; that said deed was afterwards record-

ed in book 6 page 107 in the records of the clerk of the Circuit Court for Hernando county, Florida.

That on the 26th day of September, A. D. 1890, your orators and oratrixes, James Connor, Rosanna Connor, Eugene Connor and Johanna Connor, wife of the said Eugene Connor, executed their quit-claim deed for their interest in said lands to said Hancock for the consideration of six hundred dollars, said deed being recorded in said clerk's office in book 6 on page 108. That your orator W. J. Connor executed to said defendant, Hancock, a quit-claim for his interest in said lands on the 5th day of December, A. D. 1890, for the sum of two hundred dollars which said deed is recorded in said clerk's office in book 6 on page 282." The bill further alleges that complainants afterwards discovered and so allege that all of said representations and assurances made by Hancock, were utterly false in every particular and were made by him solely to circumvent, cheat, defraud and swindle complainants and obtain from them the aforesaid deeds. That in truth and fact no such English syndicate existed and the lands were not solely valuable for the pine timber standing thereon, but there did exist large and valuable deposits of phosphate on said lands and said deposits rendered them exceedingly valuable, which fact was well known to Hancock and his co-defendants and conspirators as hereinafter charged, but was entirely unknown to complainants and studiously concealed from them by said Hancock; that said lands at the time of the execution of said deeds were worth at least the sum of $30,000. It further alleged that the defendants, well knowing the great value of the complainants' land, and their ignorance thereof by reason of their residence in a distant State, conspired and confederated together to oppress, injure and defraud said complainants out of said land, and for this purpose

said defendants deputed and sent Hancock as agent to complainants to obtain by false and fraudulent statements and representations aforesaid the said deeds from them; that after Hancock had fraudulently thus obtained from complainants said quit-claim deeds, he, on the, to-wit: 20th day of February, 1891, executed to his said co-conspirators a quit-claim deed for an undivided three-fourths interest in said land and said deed was recorded in the office of the clerk of the Circuit Court of Hernando county in book 6, page 388.

In reference to tax deeds it is alleged that complainant Stackpole and one John Connor, deceased, and whose heirs are co-complainants in this suit, purchased the land in controversy in October, 1882, and obtained a deed therefor from the board of education of the State of Florida, and that said purchasers were the sole owners of said land during the whole of the years 1888 and 1889, and that said land was not returned for taxation for said years by either of the then owners, or by any authorized agent for them; that said land was wild forest land and not in the actual possession of any one during said years 1888 and 1889, nor at any time from that date to the filing of this bill. That the assessor of revenue for Hernando county for the purposes of taxation, assessed for each of said years said land as the property of W. L. Connor, a person unknown to complainants; that said land was placed on page 48 of assessment roll of 1898, and in valuation column the figures 200, in the column for total taxes for State purposes the figures 80, and in the column for total taxes for county purposes the figures 200 occur, with no marks or other writings to show for what these figures stand; that said land was placed on page 42 of assessment roll of 1889 and in its valuation column the figures 160, in the column for total

taxes for State purposes the figures 90, and in the column for total taxes for county purposes the figures 136 occur, but with no $ mark or other writing to show what these figures mean, and that under such illegal and void assessments the lands were sold for taxes to certain parties from whom defendants obtained quit-claim deeds. The bill asks that said tax deeds be cancelled and surrendered.

It was also alleged that defendant John M. Taylor on the 23rd of March, 1892, executed a mortgage on his one-fourth interest in said land to the defendant Geo. T. Ross to secure the sum of $3,500, which said mortgage was recorded in book 8 page 115 in the Hernando county records April 13th, 1892.

The prayer of the bill is that the quit-claim deeds from complainants to Hancock, and the quit-claim deed from him to defendants Hale, Taylor and Keathley, be cancelled and surrendered upon the payment by complainants of the one thousand dollars and interest thereon received by them from Hancock, which is tendered.

Keathley died and the suit was revived against his wife, heirs at law and legal representative. It appears that the wife was of unsound mind and she is represented by guardian. The minor children are represented by by guardian.

Demurrers were filed and overruled but as no argument is made on this ruling no notice need be taken of it.

Hancock filed a separate answer. In his answer Hancock admits the purchase by him of the land in question at the times and for the several sums set forth in the bill, but avers that the sum of $800, paid to James, Rosanna, Eugene and William Connor for their respective shares was the price fixed by them without any

suggestion or representations whatever from him as to the value of the land. He further avers that at the time he began negotiations with complainants for the purchase of the land he had never examined it with the view of ascertaining whether it contained deposits of phosphate or other minerals, and that complainant Stackpole and one John Connor under whom the other complainants derive title were in actual possession of the land and resided thereon for about six months and had every opportunity to examine the same and ascertain what deposits, if any, were contained therein. All the allegations of the bill in reference to the false and fraudulent statements and misrepresentations as to the value of the land and that it had no phosphate deposits, are denied in toto and in detail, and defendant avers that no such statements and misrepresentations were made by him. In reference to the tax deeds to the land it is averred that defendant, together with others had purchased two tax deeds as herein more fully shown and that he had said tax deeds in his possession at the time he was negotiating with complainants and exhibited the same to them. The answer also denies the allegations of the bill in reference to inducing complainant, Stackpole, to drink intoxicating liquors while defendant was negotiating with him in regard to the purchase of his interest in the land. The answer further avers as follows: "This defendant further answering denies that in any way whatever, did he make any false or fraudulent representations to the complainants or either of them, concerning the land in question, or that any false, deceitful or fraudulent representation was made by him, either in his individual capacity or as agent of his co-defendants, but says that he, together with the defendants John M. Taylor, John J. Hale and C. C. Keathley, now deceased, but whose heirs and rep-

resentatives are parties defendant hereto, concluded to negotiate for the purchase of said land, and that this defendant in negotiating and concluding said purchase, acted honestly, and without any endeavor to cheat, defraud or otherwise injure complainants, or either of them, and that after agreeing upon a price, the complainants executed deeds for their respective interests, and the defendant paid them the purchase price so agreed upon, and took said deeds as of right he could do. This defendant further answering says that immediately upon the execution and delivery of said deeds by complainants he, with the said Hale, Taylor and Keathley took actual possession of the land in controversy and had erected and constructed a small house upon the same, which was subsequently destroyed by fire; that from the time of so entering into possession of said land, they have been in the continued occupation thereof, having had the same surveyed, worked upon and a portion thereof enclosed with a good substantial fence. This defendant further answering says that prior to the execution and delivery of the deeds from the complainants to himself, he, with said Hale, Keathley and Taylor, had obtained a quit-claim deed to said land from Chauncey S. Wilson and William E. Law who held a tax deed for the same, and had at the same time obtained from the said Wilson and Law a transfer of a tax certificate which they held for said land, the same having been sold for the non-payment of taxes for the years 1888 and 1889, all of which will more fully appear by reference to said certificate and deeds, copies of which have been filed with a separate answer of this defendant to the original bill herein, said copies being marked respectively A, B, C, D, and E, and prayed to be taken as a part of this answer. And this defendant avers that the complainants, nor either of them, were at the

time of the institution of this suit, or at any time since then in the possession of said land or any portion thereof, nor is said land wild forest land and unoccupied, as is alleged in the complainants' said bill of complaint."

. It is also alleged that the assessment and sale of said land for non-payment of taxes for the years 1888 and 1889, were so far as defendant knew, perfectly legal and as to such alleged illegality strict proof was required. There is also contained in the answer a demurrer to the bill as not making a case entitling complainants to any relief.

The joint answer of the other defendants, except Ross, after the usual reservation of benefit on account of uncertainties and imperfections in the bill, admits the purchase by W. S. Hancock, their co-defendant, from complainants of the land in question for the price alleged, and at the time stated therein, but they aver that they did not know of their own knowledge what, if any, representations were made by said Hancock to complainants in reference to said land, and they emphatically deny that if any fraud or deceit was practiced by Hancock or that if any false, deceitful or fraudulent representations were made by him to the complainants or either of them to induce them to sell said land, the same were made (with) their authority, knowledge, consent or approval, and they according to the best of their several and respective knowledge, information and belief, deny that Hancock made any false or fraudulent representations to complainants in reference to the deposits of phosphate or other minerals upon said land, or that Hancock represented and asserted to complainants that the said lands were valueless save for the small amount of timber thereon, and that his object in purchasing said land was for the purpose of selling it together with lands of his own to an English syndicate. They also deny upon information that Stackpole was in-

toxicated when he executed his deed to Hancock.

In reference to the allegation in the bill about tax deeds these defendants aver that they did not know of their own knowledge what representations, if any, were made by Hancock, but they say that in fact and in truth said land had been twice sold for the non-payment of State and county taxes levied and assessed thereon for the years 1888 and 1889, as would more fully appear by the exhibits attached to the answer of Hancock. Further answering defendants say in reference to the charge in the bill of the voidness of the assessment and sale of the land and of the tax deeds issued in pursuance thereof and purchased by Hancock, Hale, Taylor and Keathley, that they are uninformed save from the allegations in the amended bill and for aught they know said assesments and sale may be perfectly good. It is denied that the land is wild forest land and unoccupied at the time of the institution of the suit or the filing of the amended bill, but on the contrary they aver that immediately after the execution and delivery of the deeds by complainants to Hancock, he, Hale, Taylor and Keathley went into the actual possession of said land and have so remained up to the time of the filing of this answer. The answers reserve the question of the sufficiency of the bill to entitle complainants to any relief as matter of law, and conclude as follows: "These defendants deny all and all manner of unlawful combination and confederacy wherewith they are by said amended bill charged without this that there is any other matter, cause or thing in the said complainants' said bill of complaint contained material or necessary for these defendants to make answer unto and not herein and hereby well and sufficiently answered, traversed, confessed and avoided or denied, is true to the best knowledge and

belief of these defendants, all which matters and things these defendants are ready and willing to aver, maintain and prove as this honorable court shall direct."

G. T. Ross filed a plea alleging that he loaned the sum of $3,500 to defendant John M. Taylor and that as security for said loan, he took from him, Taylor, a mortgage on his interest in said land and that said loan was made and mortgage taken in good faith and without any knowledge on his part that the title of Taylor to said land was defective, or that the same had been obtained by fraud or deceit if such was the case as alleged in the bill.

Replications were filed to the answers and the plea of Ross was set down for argument.

Testimony was taken covering the entire case including the matters embraced in said plea, and on final hearing the court decreed that the equities of the case as to W. P. Stackpole were with him, and as to the other complainants the equities were with defendants. The quit-claim deed from complainant Stackpole to W. S. Hancock, and the tax title to the land in question were ordered to be cancelled upon said complainant paying to defendants the moneys which might thereafter be adjudged to be due from him for taxes, improvements made upon and incumbrances discharged from the land, and a reference was made to a master to state an account of what was due for taxes paid and for money expended in improving the property.

Appeals were entered by both complainants and defendants as styled in the beginning of this statement from the decrees adverse to them respectively.

The other facts are stated in the opinion.

*T. S. Coogler, G. C. Martin* and *Angus Patterson* for Stackpole et al. Appellants.

*Sparkman & Sparkman,   John P. Wall and Geo. P. Raney* for Hancock et al. Appellees.

(Judge Maxwell, of the First Judicial Circuit, sat in the place of Mr. Chief-Justice Taylor, who was disqualified.)

PER CURIAM:

Both complainants and defendants entered appeals in this case, and separate transcripts of the record have been filed on the appeals.   No objection is urged to any of the appellate proceedings in this court, nor is any objection made to the procedure in the Circuit Court, except a suggestion in brief of counsel for Hancock and others that the record fails to show a disposition of the plea filed by George T. Ross and set down for argument. Ross was made a party to the bill but no relief was specially prayed against him, nor does the decree appealed   from   expressly   adjudicate   anything   as to his rights.   After the filing of a plea by him, setting up an interest as mortgagee in the undivided interest of the defendant John M. Taylor, it was set down for argument, and there is no showing that any hearing was had thereon.   The record does show that the parties went into proof on the matter of the plea and that the case was brought on for final hearing without any objection as to the condition of the pleadings. Ross, though joining in the appeal, has filed no assignment of errors here, nor is there any error assigned by any appellant on the condition of the record as to said plea.

Where the parties, after a plea is filed and set down, fail to bring it on for hearing, and proceed to take testimony as to the matters of the plea, and further bring the case on for hearing, this court, in accord-

ance with the principle announced in Crump v. Perkins, 18 Fla. 353, should not reverse the decree unless there is error on the merits.

Both of the appeals in the present case are presented together, and in view of the rule that an appeal in chancery opens up the entire case for appellees as well as appellants, the case will be disposed of on its merits, so far as disclosed by the record, without reference to the strict requirements as to assigning and considering errors in the appellate court. The bill of complaint has a double object: It seeks the cancellation of certain quit-claim deeds from complainants to defendant Hancock, and a similar deed from the latter to the other original defendants, and also certain tax titles acquired by all of said defendants. In reference to the quit-claim deeds, the testimony discloses three separate transactions in the purchase of the land by Hancock from complainants. On and prior to June, 1890, the land in question was jointly owned by W. P. Stackpole and John L. Connor, and about the 2nd day of that month Hancock purchased the interest of Stackpole in the land. Connor died, and about the 26th of September, 1890, three of his heirs, James, Eugene and Rosanna Connor, deeded their interest in the land to Hancock. The purchase by Hancock from the parties named was made by him in person in the State of Connecticut, where they resided. In December of the same year Hancock purchased through one J. T. Lynch the interest of W. J. Connor, the only other heir at law of John L. Connor, deceased. Stackpole and John L. Connor, deceased, purchased the land in 1882, and for a short time resided upon it, but soon left the State and never again returned. Phosphate had not been discovered in Florida when they were here, and no interest in Florida lands had arisen on account of phosphate. This discov-

ery had been made a short time before Hancock purchased from Stackpole, and the latter knew nothing of it when he sold his interest. Hancock had long resided in Florida and near the land, and it is abundantly shown that he knew of a valuable deposit of phosphate on the land before he went to Connecticut to purchase. The proof shows without contradiction that he visited the land before he started to go to Connecticut, and saw a pit dug into the rock on the land that disclosed what was stated to him to be phosphate. At that time there was great excitement in the country over the discovery of phosphate, and its supposed great value. Hancock did not disclose to Stackpole the fact that phosphate had been discovered on the land. The testimony tends to show that Hancock represented, in making the purchase, that he wanted the land to add to land of his own in order to complete a body of timbered land that he expected to sell to an English syndicate, and that the land was valuable only for the timber that was on it. He also stated that the land had been sold for taxes, and that a tax deed had been issued, and this statement was true. There was some testimony tending to show that Hancock had induced Stackpole to drink freely at the time of the purchase, but it did not go to the extent of showing incapacity on his part to make a contract of sale. The testimony is of a character to warrant the chancellor's conclusion, and to forbid a disturbance of it, that Hancock represented to Stackpole, as an inducement for him to sell, that the land was valuable only for the timber that was on it, and also that the special reason of the former in desiring to buy it was to augment a body of his own land that was necessary to complete a sale to an English syndicate. It has been decided in this State, in accordance with the prevailing rule, that statements

amounting to an estimate or opinion of the value, condition, character or adaptability to certain uses of real estate are not actionable unless the party resorts to some fraudulent means to prevent an examination of the property. Williams v. McFadden, 23 Fla. 143, 1 South. Rep. 618; West Fla. Land Co. v. Studebaker, 37 Fla. 28, 19 South. Rep. 176. In proceedings in chancery to cancel a deed to real estate on the ground of fraud, the mere expression of an opinion as to value, or a statement as to the uses for which the land is wanted, will not ordinarily suffice. A fraud may, however, under some circumstances be perpetrated by a *suppressio veri* as well as a *suggestio falsi*. According to the rule of the common law a vendee who has information of a mine on the land of another of which he is ignorant is under no legal obligation to disclose such fact in making a purchase. Under such circumstances the vendee may remain silent as to the real facts and purchase, but such situation places him under legal obligation to do no act, or make any representation calculated to mislead the owner into the belief that there was no mine on the land. If the vendee undertakes to speak under such circumstances, he must utter the truth. The principle stated in the English case of Turner v. Harvey, 1 Jacob, 169, is that the purchaser is not bound to give the vendor information as to the value of the property, but a very little is sufficient to affect the application of this principle. This doctrine is illustrated by the case of Livingston v. Peru Iron Co., 2 Paige, 390, where the vendee, knowing the existence of a valuable spring on the land, represented that the land was of no value except as a sheep pasture, for which purpose it was wanted. The authorities sustain the view that while a purchaser, situated as Hancock was, is not bound to disclose facts in his knowledge, or to answer inquiries as

to such facts, yet if he undertakes to do so, he must disclose the whole truth, without concealment of material facts, and without doing anything calculated to prevent an investigation on the part of the seller, especially if he does not reside near the land, and the purchaser does. Caples v. Steele, 7 Oregon, 491; Walters v. Morgan, 3 De G. F. & J. 718; Dolman v. Nokes, 22 Beavan, 402; Smith v. Countryman, 30 N. Y. 655; Smith v. Beatty, 2 Iredell's Eq. 456, S. C. 40 Am. Dec. 435; Harris v. Tyson, 24 Penn. St. 347, S. C. 64 Am. Dec. 661; Kohl v. Lindley, 39 Ill. 195, S. C. 89 Am. Dec. 294; Swimm v. Bush, 23 Mich. 99; Morgan v. Dinges, 23 Neb. 271, 36 N. W. Rep. 544; Bowman v. Bates, 2 Bibb, 47, S. C. 4 Am. Dec. 677; Laidlaw v. Organ, 2 Wheaton, 178; 2 Pomeroy's Eq. Jur., §902 and note. The statement made by Hancock, that the land was valuable only for the timber that was on it, would ordinarily be regarded as an expression of an opinion, but under all the circumstances of this transaction, as disclosed by the testimony, it was calculated to mislead Stackpole, and to prevent him from making any inquiry in reference to the land, and constituted a part of the scheme to conceal the real facts as to the discovery of phosphate on the land, and which, if known to Stackpole, would have prevented the sale at the price accepted. The conclusion reached by the chancellor, that the sale by Stackpole to Hancock, so far is he is concerned, is sustained by testimony of such a character as to preclude, under the established rule on the subject, a reversal. The decree, however, goes further and cancels the deed from Hancock to Hale, Taylor and Keathley as to Stackpole's interest in the land. The bill alleges that Hancock, Hale, Taylor and Keathley conspired and confederated together to buy the land, and that Hancock was deputed as agent to go and make the

purchase.   The case made by the bill as to Hale, Taylor and Keathley is that they originally united with Hancock and participated with him in the entire purchase, and upon this case relief must be had if at all.   Under the allegations of the bill, the decree against all the defendants as to Stackpole's interest would be correct on proof of the fraudulent representations of Hancock if he in fact was acting for the other defendants, though they did not authorize such representations and did not know of them when the deed from Hancock was executed to them.   But the proof does not show such a state of facts.   It is established beyond question that Hale, Taylor and Keathley never saw any of the complainants at the time of the purchase of the land, and did not make any representations of any kind to them.   It is also clearly shown by the testimony that they did not have any agreement or understanding with Hancock in reference to the purchase of the land at the time the deed from Stackpole was obtained.   They subsequently obtained a deed from Hancock for valuable consideration, and there is no basis in the testimony for a conclusion that they had any information of the representations made by Hancock when he purchased the property.

Counsel for Stackpole have assumed that the combination of the defendants and agency of Hancock to purchase the land is established by the pleadings, and required no proof.   In this they are mistaken.   Hancock filed a separate answer and therein admitted the allegation of agency, but his answer cannot be used against the other defendants in the absence of proof that he occupied such a relation to them as to bind them by his representations.   The defendants, other than Hancock, deny positively that they authorized Hancock to make any of the fraudulent representations alleged, and upon information they deny that any such repre-

sentations were made. They do not, however, directly respond to the allegation that they agreed with Hancock to buy the land and authorized him to make the purchase from the complainants; and it is assumed that by their failure to make such response the allegation of the bill is admitted to be true. It will be seen from the statement that the answer of said defendants concludes with the usual general denial found in answers in chancery, and this is sufficient to make an issue on material allegations not admitted, and to which no direct response is made. There is no statute in Florida regulating the effect of answers in chancery in this respect, and the general rule prevails, that where there is not direct response to a material statement in the bill, no exceptions filed and the case is brought to hearing on the replication to the answer, such statement can not be taken as admitted, but must be proved. It need not be proved by the amount of testimony required to overcome a sworn responsive answer, but it must be shown by at least a preponderance of evidence. 1 Ency. of Pl. & Pr., p. 930, b, and authorities cited; Smith v. St. Louis Mutual Life Insurance Company, 2 Tenn. Ch. 599.

The testimony in this case is clear and positive that defendants Hale, Taylor and Keathley had no connection whatever with Hancock in the purchase of the land when Stackpole sold his interest, and on the proof, under the state of the pleadings, the chancellor should not have decreed against said defendants as to the interest acquired by them in the half interest of W. P. Stackpole. The complainants completely failed to establish the case made against said defendants as to said interest, and the latter were not compelled to specially set up the defense of a *bona fide* purchaser without notice, but

could meet the particular case made against them in the bill and thereby defeat a recovery.

As to 'the purchase from James, Eugene and Rosanna Connor, the case is different. When this purchase was made, Hancock is shown to have acted for and represented the other defendants. It is true that there is no testimony tending to show that defendants Hale, Taylor and Keathley authorized any false representations, or knowingly ratified any, but it is true that Hancock was then acting for them, and they must be bound by his acts and doings. Cofer v. Moore, 87 Ala. 705, 6 South. Rep. 306. The decided weight of the testimony shows that Hancock represented to James, Eugene and Rosanna Connor at the time he purchased from them that the land did not contain phosphate. All three of them testify that in response to a direct question as to whether there was any phosphate on the land, Hancock stated there was none. It also appears from the testimony of two other witnesses, not connected with the litigation, that Hancock stated to them in Willimantic, Connecticut, where the purchase was made, that no phosphate existed on the land. One of the witnesses had advised the Connors not to sell, and Hancock obtained an interview with him for the purpose of convincing him that his advice was wrong, and to get him to advise the Connors differently. It is true that the witness mentioned had been informed that Hancock held a tax title to the land, and on 'this information he advised the Connors not to sell. Hancock then held two tax titles to the land, and it appears that he impressed the witness with the idea that the land might be lost to the owners on account of the tax titles. But the witness states that before consenting to advise the Connors to sell under the showing of tax titles he asked Hancock about the phosphate on the land, and was as-

sured by him in the most positive manner that none existed. After this the witness advised the Connors to sell. The other witness was foreman of a mill where some of the Connors worked, and, meeting with some difficulty in engaging the Connors in a negotiation of sale, Hancock approached the foreman and procured him to arrange an interview with the Connors. Hancock stated to the witness his object in seeing the Connors, and the witness says Hancock offered to pay him fifty dollars gratuitously if the trade was consummated. In the conversation on the subject the witness says Hancock stated that there was no foundation for any report that phosphate existed on the land. There was some conflict in the evidence, and Hancock denied all the statements imputed to him in reference to false statements about the land, but a careful consideration of the entire testimony makes it clear that the decided weight of it is in favor of the charge that a false statement was made to the three Connors in reference to the existence of phosphate on the land. The full extent of the phosphate existing is not definitely shown, nor is the full value of the land made to appear, but it is sufficiently established that a valuable mine of phosphate existed on the land which greatly enhanced its value.

It may be that the decree against the Connors was influenced by the view that they were induced to sell solely on account of tax titles which Hancock held. Counsel take this position here. It does appear that Hancock exhibited two tax titles at the time of purchase and brought their existence prominently to view in all the negotiations, but in connection with the tax titles and as an additional inducement to bring about the sale the representation was made that the land had no phosphate on it. It was made to owners who

had never seen the land, and who resided in a distant State, and under such circumstances as authorized them to rely upon it as being true. It was material, and when Hancock undertook to speak in reference to the matter he should have disclosed the entire facts. Complainants testify that they relied upon the statement that there was no phosphate on the land as being true, and it cannot be safely affirmed on the evidence that it did not operate to some extent in inducing the sale. It so, complainants can avail themselves of it in having a cancellation of the sale. The decree is erroneous as to James, Eugene and Rosanna Connor, but as to W. J. Connor it must be affirmed on the ground of an entire absence of proof showing any improper representations whatever made to him in obtaining the conveyance of his interest in the land.

There is some contention that complainants were barred by laches in not earlier instituting proceedings to cancel the sales. No such defense was made in the answers, but conceding that it may be insisted on without specially pleading it, the record here affords no sufficient support for the contention.

The amended bill seeks the cancellation of two tax deeds which defendants sought to interpose as evidence of a superior title in themselves. One of the deeds is based upon an assessment of the land in question for the year 1888, and this is the only one that demands any consideration, as the other does not embrace the land, and can, therefore, have no bearing on the case. The land in question is the W 1-2 of S. W. 1-4 of section 12, township 22 S., range 20 east, and the deed put in evidence, based upon the assessment of 1889, describes the land as the W. 1-2 of N. W. 1-4 of section 12, township 22, range 20 east, which is an en-

tirely distinct parcel of land from that owned and sold by the complainants.

Complainants put in evidence page 48 of the assessment roll of Hernando county for the year 1888, showing an assessment of the land for that year as the property of W. L. Connor. Proof was then made by the clerk of the Circuit Court that the tax returns, after the completion of the assessment rolls, were deposited in his office, and he was the custodian of them, and that upon an examination of the returns for the year 1888 he found one for the land in controversy. The return was produced in evidence and showed a proper description of the land listed to J. L. Connor. The witness further stated that from his knowledge of his handwriting he would say the return was in the handwriting of the tax assessor for the year 1888. It was shown that W. P. Stackpole and John L. Connor were the owners of the land during the year 1888, and no one was in the actual occupancy of it. The assessment in question was made under the act of 1887, Chapter 3681, the twenty-second section of which reads as follows: "The assessor shall ascertain by personal inspection, when not already sufficiently acquainted therewith, the value of the lands and assess them at their full cash value, and set down in the assessment rolls following and opposite the description of the lands, the name of the owner, or person in whose name the return is made; and when land has not been returned, the assessor shall enter the word 'unknown' in the column of the assessment roll provided for the name of owners or person making return. A failure to give the name of the owner or person making the return, shall not invalidate the assessment. When the owner or person making the return of any real estate is dissatisfied with the valuation fixed thereon by the assessor, and shall make complaint

thereof to him, the same shall be so noted and reported by the assessor to the County Commissioners, to be reviewed and equalized by them." This act prescribed the form of tax deed and made it *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive. The validity of the act in reference to the evidentiary force of the deed has been affirmed in this State. Sams v. King, 18 Fla. 557; Florida Savings Bank v. Brittian, 20 Fla. 507; Mundee v. Freeman, 23 Fla. 529, 3 South. Rep. 153. In Sams v. King it is said that the presumption of regularity which attaches to a tax deed must prevail in its favor until evidence is given of facts which show irregularity. It is not enough to prove facts from which irregularity may be inferred. The presumption must prevail until facts inconsistent with it are shown. The evidence introduced by the complainants was sufficient to prove, in the absence of a counter showing, that the land was returned to the assessor for the year 1888 in the name of J. L. Connor, who was an owner to the extent of an undivided half interest, and that the assessor undertook to base his action in assessing the property upon this return. It was his duty to make the assessment to the owner or person making the return, but this was not done. The assessment was to a person not the owner, nor to one making the return, and in this respect it was clearly in violation of the statute. To what extent the clause in the section quoted, that a failure to give the name of the owner or person making the return shall not invalidate the assessment, was intended to cure defective assessments, is not entirely clear, but it applies only to the failure to give the name of the owner or person making the return, and not to the case where an entirely improper and unauthorized name is given. Giving the

statute the strict construction which is applied to such legislation, the assessment was void, and consequently the deed based upon it was overthrown. The decree, so far as this tax deed is concerned, was correct.

It appears that the decree made no provision for a refunding of the purchase money and interest by the succeeding complainant, W. P. Stackpole. The cancellation should be conditioned upon the refunding of the proper amount of purchase money and interest by those of the complainants in whose favor the decree is made.

The decree, so far as W. J. Connor is concerned, is affirmed; and in all other respects it is reversed with directions to enter a decree in accordance with the views expressed.