135 So.2d 876 (1961)
William J. RAMEL and Leah Ramel, his wife, Appellants,
v.
CHASEBROOK CONSTRUCTION COMPANY, Inc., a Florida corporation; Chasebrook, Inc., an Ohio corporation; and S.J. Stone, Appellees.
No. 2050.
District Court of Appeal of Florida. Second District.
November 22, 1961.
Rehearing Denied January 5, 1962.
*877 Ralph R. Quillian, Hollywood, for appellants.
Abrams & Anton, Hollywood, for appellees S.J. Stone and Chasebrook, Inc.
Stephen A. Spear, Ft. Lauderdale, for appellee Chasebrook Const. Co., Inc.
ALLEN, Acting Chief Judge.
This is an appeal from a final order wherein the trial judge, sitting without a jury, at the close of plaintiffs' case dismissed the cause upon motion of defendants' counsel for directed verdict. Appellants, plaintiffs in the lower court, seek a reversal of said order of dismissal, contending that there is ample evidence which was introduced in their behalf to establish a prima facie case against all of the defendant-appellees.
The action was in tort for fraud and deceit for alleged fraudulent representations made to plaintiffs concerning the construction of a home which was sold to plaintiffs by defendant Chasebrook Construction Company, Inc. Chasebrook, Inc., its president Stone, and one Garson, president of *878 Chasebrook Construction Company, Inc., were made parties defendant. Defendant Garson, though he was not served, did appear at the trial. He is not, however, a party to this appeal. It was alleged that although the construction and sale of the house to plaintiffs were performed in the name of Chasebrook Construction Company, Inc., such actions were in truth and in fact those of defendants Chasebrook, Inc., Stone and Garson as well.
It appears that defendant Stone was a principal stockholder and dominant officer and director of Chasebrook, Inc.; that defendant Garson is also a stockholder, officer and director in said corporation; and that Stone was a director in Chasebrook Construction Co., Inc., until he resigned which was shortly before the events material to this cause took place. Defendant Garson and his wife, who is also Stone's daughter, are the principal directors and stockholders of said Chasebrook Construction Co., Inc.
Both of these corporations were involved in various phases of the development of a subdivision known as Sunset Isles. Chasebrook, Inc., through its president Stone, was apparently the prime mover in the development of Sunset Isles and held title to the various lots. In some instances these lots were sold directly to a prospective home buyer who would give a purchase money mortgage to Chasebrook, Inc., which in turn subordinated the purchase money mortgage to a construction loan procured by Chasebrook Construction Co., Inc., or any of several other builders in the subdivision selected by the buyer. After completion of the house, if subsequent refinancing was inadequate to cover the land, Chasebrook, Inc., retained the second mortgage. In other instances the lots were sold directly to the builders who would build thereon for speculation. Upon the sale of a house, the purchase money mortgage held by Chasebrook, Inc., would be paid off by the builder out of the proceeds of the sale. This evidently was the type of transaction that preceded the sale of the house to plaintiffs by Chasebrook Construction Co., Inc.
The sale of the house to plaintiffs was negotiated primarily by salesmen but prior to the consummation thereof plaintiffs came into contact with both defendants Stone and Garson. At the trial plaintiffs testified that prior to the purchase they both inspected the house; and that defendants Stone and Garson, stated, among other things, that the house was well constructed and well built. After plaintiffs paid the $28,500 purchase price they moved into the house on September 15, 1958. Several months later the pool and patio began pulling away from the house foundation. The west wall of the house developed cracks between 1/16th and 1/8th inch in thickness in a radiating pattern beginning at the point where the patio originally was joined to the house foundation. The lower two feet of the rear wall of the house has developed an outward bulge and portions of the foundation have sunk or settled away from the house. Defendant Garson promised that the defects would be repaired but he left town without performing any repairs.
After the situation grew worse with the house developing more cracks and the foundation, patio and pool continuing to settle and pull away from the house, the defendant Stone stated to the plaintiff wife: "* * * you can pat me on the back, on my mother's grave this shall be fixed. This shall be repaired. * * *" However, no repairs were ever made. The plaintiffs consulted with various engineers and a realtor and, after learning of the lack of proper piling under their house, the instant suit was filed. The foregoing facts are as summarized from both plaintiffs' testimony.
Robert Graves, a real estate expert appraiser, testified as to the settling of the foundation along the south and west side of the house; that the foundation for the pump for the pool was broken in two from settling; that it would require $9,000 to repair the house and that it had only a *879 $13,000 to $14,000 speculative market price due to its condition.
Gordon W. Cusick, a construction engineer employed by defendants, testified that he was erecting a sea wall behind the property when the plaintiffs' house was being constructed and that his men were in knee deep muck in the area where the plaintiffs' pool was subsequently constructed. Cusick stated that he suggested to defendant Garson that piling should be installed but Garson refused to heed his advice by saying that piling was not needed. Cusick also testified that the pool is sinking and pulling the patio with it and that the house foundation is settling. Specifically, Cusick stated that there was no piling or support or foundation under the house other than the muck. Cusick's testimony further revealed that he had, pursuant to instructions by defendant Garson, sealed some cracks in the house prior to its occupancy by plaintiffs.
There is other testimony in the record supporting the factors discussed thus far as well as prior knowledge on the part of Stone of the defective foundation. In view of the facts known to defendants that the house, patio, and pool were erected on a muck foundation after being warned not to do so by an engineer employed by defendants, the essential question is, does the statement by Stone that the house was well constructed constitute actionable misrepresentation? In this case the defendants held themselves out as land developers and contractors with apparent knowledge of proper construction methods.
The defendants contend that no positive representations were made concerning the structural foundation of the house and pool; and that since plaintiffs inspected the property prior to the purchase they have no right now to complain. These contentions might well have some merit as to defects which were discernible upon a visual inspection. Smith v. Hollingsworth, 85 Fla. 431, 96 So. 394. It is well settled that where one claims that fraudulent representations have been made to him, he is charged with knowledge of all facts that he could have learned through diligent inquiry. Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408; 14 Fla.Jur. Fraud and Deceit, § 37. We are concerned, however, in the instant case, with facts regarding a defective foundation laid upon knee deep muck unsupported by piling or other appropriate structural reinforcement. It should be noted that a statement of a party having exclusive or superior knowledge may be regarded as a statement of fact although it would be considered as opinion if the parties were dealing on equal terms. See cases cited at 14 Fla.Jur., Fraud and Deceit, §§ 14, 28; 10 F.L.P., Fraud and Deceit, § 3; 56 A.L.R. 429. The defect in the instant case was buried below the surface of the land and was not apparently visible or discoverable without excavation of the property. Failure to learn of such defect in such a situation certainly should not be fatal to recovery for misrepresenting that the house was "well constructed." See cases collected in an Annotation entitled: "Fraud predicated upon vendor's misrepresentation of physical condition of real property," 174 A.L.R. 1010, 1033, et seq.
No case from this jurisdiction has been found on a similar set of facts and many of the cases from other jurisdictions present stronger proof of positive representations on the part of the sellers. In Pinger v. Guaranty Investment Co., Mo. App. 1957, 307 S.W.2d 53, the seller's agent represented that the house was built on solid rock. After the house began settling the purchasers were successful in recovering damages in fraud from the sellers which award was affirmed on appeal. Similarly, in Lincoln v. Pohly, Tex.Civ.App. 1959, 325 S.W.2d 170, the Court upheld a recovery in fraud against the seller-contractor on the basis that the contractor had a duty to construct and finish the house with good workmanship and good materials not only because of express representations that he would do so, but also because of implied obligation to do so and the failure to so *880 construct the house rendered him liable to the vendee for damages.
The Vendor, in Smith v. Bifano, Tex. Civ.App. 1959, 330 S.W.2d 473, represented to the vendee that he had compensated for the fill dirt in building the foundation for the house. After a few months the house began to settle, crack, and fall away from the eaves and sheetrock walls. The plaintiff recovered a verdict but it was set aside and judgment entered for the vendor. On appeal the verdict was reinstated on the ground that the false representation as to compensating for fill dirt constituted actionable fraud.
In Ashburn v. Miller, 1958, 161 Cal. App.2d 71, 326 P.2d 229, 231, the vendors represented that the lot was a "solid lot," or a "solid building site" when in fact the purchasers later discovered the lot consisted largely of uncompacted fill. The purchasers had to expend $1,605.75 to make the lot suitable for building a home thereon and brought suit for damages based on the fraudulent misrepresentation. The plaintiffs recovered $3,000 which was affirmed, and the appellate court in so doing stated that defendants would not be permitted to raise as a defense that innocent plaintiffs should not have trusted him.
One of the clearest and most far reaching decisions on a similar issue is Cohen v. Vivian, 141 Colo. 443, 1960, 349 P.2d 366, 367. The Cohens purchased certain land for development and engaged a contractor to commence construction. The contractor discovered that the land was filled soil and would require alteration before it would be suitable for residence foundation construction. After being notified of this the Cohens authorized the alteration and the attendant expenditures.
Mrs. Vivian and Mrs. Welch, two elderly ladies, desired to have adjoining houses and, after inspecting two duplexes under construction on the Cohen property, entered into contracts to purchase the two houses. The contracts each contained a clause stating: "In entering into this contract, I rely upon inspection and not upon representations of any person."
It was not disputed that the two ladies were unaware that the houses were being constructed on filled land. Soon after they moved into their respective houses, the houses sank, titled and cracked to such an extent that continued occupancy of Mrs. Vivian's house became so dangerous she had to move out. Mrs. Welch had to expend large sums on repairs to her house. Both ladies filed complaints alleging the failure of the defendants to disclose that the soil was not suitable for residence construction constituted gross negligence and was a proximate cause of plaintiffs' damages. The trial court granted Mrs. Vivian rescission and damages and granted Mrs. Welch damages but denied rescission. In affirming the judgments the Supreme Court of Colorado stated:
"* * * We are here dealing with a latent condition from the standpoint of the Vivians and Mrs. Welch. It became the equivalent of a patent condition to the Cohens by virtue of the discovery that it was filled ground. A latent soil defect, known to the seller of a house built on such soil, creates a duty of disclosure in the seller. His failure to disclose amounts to concealment, making him vulnerable to a suit based upon fraud. Caveat emptor in such case is a pervious shield affording no protection to the seller.
* * * * * *
"An inspection by a purchaser which does not disclose does not render inapplicable the rule requiring disclosure of a latent defect. Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885.
"Does the fact that the agreement in the present case contains a provision regarding inspection and its effect alter the question of liability? It would appear not. For it was held in the case *881 of Rothstein v. Janss Inv. Corp., supra, [45 Cal. App.2d 64, 113 P.2d 465] that the vendors of property containing a fill had the duty to disclose the existence of the soil condition to the purchasers notwithstanding an agreement under which the property was purchased, stipulating that the property had been personally inspected.
"The judgments are affirmed."
One of the cases cited in the above opinion is Wolford v. Freeman, 150 Neb. 537, 35 N.W.2d 98, 100, wherein the contractor had placed piling under the foundation during construction "for his own protection." The house was sold and, after cracks appeared in the house and foundation, the purchaser was granted a rescission. The contractor repaired the house and covered the cracks with material which blended in with the original mortar. The house was again placed on the market and sold to plaintiff. Shortly after plaintiff moved in, the house began to crack and within three months the cracks opened to a width of a brick. The plaintiff discovered that the house was constructed on filled land and filed suit for rescission based on fraud. The plaintiff recovered and in affirming the appellate court said:
"We determine the disputed questions of fact, as did the trial court, in favor of the plaintiff. It is patent from this record that the house was built on a foundation resting on filled earth in violation of good building practices and the building code of the city of Omaha; and that the defendant knew all the facts that lead to the ultimate conclusion that the foundation rested on filled earth. His conduct in putting down piling indicates that he had reached that conclusion sufficiently at least to undertake to guard against the result. He did not reveal the condition of the soil to the city when he secured his building permit. It also is patent that defendant knew when he sold the premises to the plaintiff that the foundation was faulty and insufficient; that he undertook to conceal and did conceal those facts from the plaintiff; that he did not reveal them to his agent; and that the condition of the soil and the construction of the foundation were latent defects and material ones. It likewise is evident that it was represented to the plaintiff that the cause of the settling had been corrected and that he need have no concern about it." (Emphasis added.)
See also Rothstein v. Janss Inv. Corporation, 1941, 45 Cal. App.2d 64, 113 P.2d 465, on the question of misrepresentation as to whether land is filled. An award for damages for fraud was upheld in Buist v. DeVelbiss Corporation, 1960, 182 Cal. App.2d 325, 6 Cal. Rptr. 259, on the basis that the contractor represented that the lot was on a cut when in fact it was on a fill; that he failed to disclose that the lot was in an area known to have underground water; and that he failed to disclose that fill was placed on the lot without proper compaction.
We feel, in view of the circumstances in the instant case, that the representations by defendant Stone constitute prima facie actionable fraud. The elements of fraud and deceit are stated in 14 Fla.Jur. Fraud and Deceit, § 9, to be that the defendant made a false statement concerning a material fact, knowing the statement to be false, with the intention that the plaintiff be induced to rely upon the representation and that the plaintiff in reliance thereon suffered consequent injury. Wheeler v. Baars, 1894, 33 Fla. 696, 15 So. 584. The statement "it is well constructed," under the facts of this case, was made with knowledge of its falsity. An inference that said statement was made with the intent that it be relied on by plaintiffs is raised by necessary implication. It is true that for fraud to be remediable, the reliance placed upon the representation must be justified under the circumstances. A representee is charged with knowledge of all facts that he could have unearthed through diligent *882 inquiry. See Fla.Jur. Fraud and Deceit, § 35, and case cited therein. Defendants' contention that plaintiffs' reliance was unjustified is untenable under the facts presented. It is difficult to see how further inspection by the plaintiff-vendees would have revealed to them the absence of proper pilings short of seeking the services of a construction expert.
The statements of the defendants in this case, in addition to being positive misrepresentations, also amount to actionable nondisclosure. In the absence of a fiduciary relationship, mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry. See 14 Fla.Jur. Fraud and Deceit, §§ 29 and 30, and cases cited. One exception to this rule is that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact. 14 Fla.Jur. Fraud and Deceit, § 28; Kitchen v. Long, 1914, 67 Fla. 72, 64 So. 429, L.R.A. 1917C, 617. We think such was the situation in the instant case. Another exception to the above rule is to the effect that even though a party to a transaction owes no duty to disclose facts within his knowledge, or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth. 14 Fla.Jur. Fraud and Deceit, § 30; Stackpole v. Hancock, 1898, 40 Fla. 362, 24 So. 914, 45 L.R.A. 814; Morris v. Ingraffia, 1944, 154 Fla. 432, 18 So.2d 1.
Defendants further contend that the statement "it is well constructed" was a mere expression of opinion made contemporaneously with other "sales talk." The following quotation from Freidman v. Greyknoll Developers, Inc., Fla.App., 1959, 114 So.2d 486, apparently involving facts similar to those in the instant case, adequately answers this contention and, in addition, provides further enlightenment on the reliance question.
"The appellee advances the argument that the dismissal of the cause of action may be sustained because the representations appear from the pleading to be a statement of the vendor which was tantamount to an estimate or opinion. See Williams v. McFadden, supra. [23 Fla. 143, 1 So. 618] Even if the representations are viewed as expressions of opinion, they would be governed by the principle that statements of a party having exclusive or superior knowledge may be regarded as statements of fact although they would be considered as opinion if the parties were dealing on equal terms. See cases cited at 14 Fla.Jur., Fraud and Deceit, §§ 14, 28; 10 F.L.P., Fraud and Deceit, § 3; 56 A.L.R. 429; cf. Stackpole v. Hancock, 40 Fla. 362, 24 So. 914, 918, 45 L.R.A. 814.
"It is also suggested that the plaintiff revealed by his complaint that he was a victim of his own credulousness and failure to investigate. See Smith v. Hollingsworth, 85 Fla. 431, 96 So. 394. In this particular I am impressed by the allegation of the complaint that the defect lay `far below the surface of said land and at no place on said land was * * * visible or discoverable without excavation of said land.' If the allegation of the complaint is taken as true an aggravated trespass would have been necessary to discover the deception."
We are cognizant that the above quotation is from a dissenting opinion in a case where the majority affirmed the lower court per curiam. The reporter does not disclose what the statements of opinion were in that case nor the circumstances surrounding the making of them. We feel, however, that the principles enunciated in the dissent are applicable to the instant case.
For all of the foregoing reasons, we hold that the evidence adduced by the plaintiffs *883 was sufficient to establish a prima facie case of fraud and deceit. Since it is necessary to reverse and remand this case for a new trial, we must allude to the question of liability among the individual and corporate defendants should the plaintiffs ultimately prevail.
From the last three paragraphs of their complaint it is apparent that plaintiffs deemed it essential to pierce the corporate veil in order to establish liability on the part of defendant Stone and the corporate defendant, Chasebrook, Inc. Such was unnecessary. It is generally held that a corporation is vicariously liable for fraud and misrepresentation practiced by its directors or agents within the scope of their employment. A corollary to this rule is that said directors and agents are also liable individually. See 7 Fla.Jur.Corporations, §§ 248 and 314; 5 F.L.P. Corporations, § 149; 13 Am.Jur.Corporations, § 1125; West Florida Land Co. v. Studebaker, 1896, 37 Fla. 28, 19 So. 176; Hinson v. Drummond, 1929, 98 Fla. 502, 123 So. 913; Fletcher, Cyclopedia Corporations, Vol. 3, §§ 1143, 1192, Vol. 10, § 4898; 2 Hornstein, Corporation Law and Practice, § 565.
The facts alleged and the evidence show more than a casual interest on the part of the corporate defendant, Chasebrook, Inc. The statement made by defendant Stone was, from plaintiffs' evidence, inferably within the scope of apparent authority conferred on him by said corporation which was the primary developer of the subdivision. Furthermore, it appears that Stone, even if not a director in defendant Chasebrook Construction Co., Inc., was at the times material to this case at least an inferable agent of said corporation. As above indicated, defendant Stone would also be liable individually. It therefore follows that if liability be ultimately established against all defendants in this case who are parties to this appeal, it will be joint and several.
The order appealed from is reversed and remanded for further proceedings not inconsistent with the matters set forth in this opinion.
Reversed.
KANNER, J., concurs.
HALL, W. TROY, Jr., Associate Judge, dissents.
HALL, W. TROY, Jr., Associate Judge (dissenting).
This is an appeal from a law action seeking damages for fraud and deceit. Inasmuch as the appellants were the plaintiffs below, and the appellees were the defendants below, the parties will be referred to here as the plaintiffs and defendants.
The complaint alleged that the defendants sold a certain new house to the plaintiffs, and "at and before the closing of the transaction, wherein Plaintiffs received the described Warranty Deed to said premises, Defendants herein and particularly Defendants, L.R. Garson and S.J. Stone, represented to Plaintiffs that said house was properly constructed upon adequate and proper pilings and foundations and was sound in every respect. Relying upon such representations, Plaintiffs assumed occupancy of said premises on or about September 15, 1958." (Emphasis supplied.) So it would seem from this allegation, and from further evidence in the case, to the effect that there was a sea wall at the south end of the lot, plaintiffs knew that the lot was at least partly filled in, and that if there were a defect in the soil, it was patent rather than latent, because of such knowledge on the part of the plaintiffs.
In paragraph 7 of the complaint, plaintiffs allege that the filled in condition of the soil, and the lack of proper pilings for the foundation of the house, were defects latent in character. So much of this allegation, as an attempt to show that the soil condition defect was latent, cannot be recognized by the Court because of the inconsistency *884 of the same with the face of the rest of the complaint. However, the allegation with regard to the pilings is sufficient.
At the trial of the case, jury was waived, and same proceeded before the Court. At the conclusion of plaintiff's case, motion for a directed verdict (in the nature of a motion for a directed verdict, had there been a jury) was made by the defendants, and same was granted by the Lower Court. From the order dismissing the cause at the cost of the plaintiffs, they have appealed to this Court.
The law of fraud and deceit appears to be:
"The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely upon it and was induced thereby to act to his injury or damage." 23 Am.Jur., Fraud, Sec. 7, page 773.
"The authorities are well agreed that the principle of right of reliance is closely bound up with a duty on the part of a representee to use some measure of protection and precaution to safeguard his interest. It is well settled, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence." (Emphasis supplied). 23 Am. Jur., page 960 and 961.
"The right to rely on a representation is closely bound up with the duty of the representee to use some measure of precaution to safeguard his own interest. In cases of this kind, the principle that the representee must exercise reasonable effort or diligence for his own protection is applied." Fla.Jur., Vol. 14, Sec. 37 Fraud and Deceit.
"In accordance with these rules, it is settled that where one claims that false representations have been made to him, he is charged with knowledge of all facts that he could have learned through diligent inquiry." Fla.Jur., Vol. 14, Sec. 37, Page 575.
It appears that the complaint states a cause of action for fraud and deceit on the part of the defendants, by their representation to the plaintiffs that "said house was properly constructed upon adequate and proper pilings and foundations and was sound in every respect."
However, the evidence produced by the plaintiffs at the trial of the cause wholly failed to support this allegation, and as a matter of fact, no evidence appears to have been given, either oral or documentary, that the defendants "represented to the plaintiffs that said house was properly constructed upon adequate and proper pilings and foundations and was sound in every respect." The only evidence given by the plaintiffs with regard to representations of the construction of the house, was to the effect, on the part of Dr. Ramel, that the house was represented to be well constructed. His only evidence on that point was that one of the defendants said to him "that the house was well constructed, and that I would enjoy it, and just general sales talk. I can't say anything more specific." This not only falls short of sustaining the allegation about adequate and proper pilings and foundations, but simply just doesn't even mention any representation about adequate and proper pilings. The other plaintiff, Mrs. Ramel, also failed to testify that the defendants represented there were adequate and proper pilings, her only testimony about representations being that one of the defendants said "It was a model home. It was the "best home. *885 It was well constructed. We would be very happy there. There wasn't another one like that," and "Oh, it is a model house. The only one like it in the whole area. It is well built. Put on the pool lights. It is beautiful. It has a beautiful patio."
The Courts generally have correctly held that fraud must be proved by a person asserting it with reasonable certainty by preponderance of evidence; and, generally fraud in business transaction must be specifically proven. Williams v. Penn Mut. Life Ins. Co., C.C.A. 5, 1928, 27 F.2d 1, certiorari denied 278 U.S. 638, 49 S.Ct. 34, 73 L.Ed. 554; McCaffrey v. Elliott, C.C.A. 5, 1931, 47 F.2d 72, certiorari denied Claude Neon Southern Corporation v. McCaffrey, 284 U.S. 636, 52 S.Ct. 19, 76 L.Ed. 541.
And the Florida Supreme Court has held that every one of the elements making up fraud must be clearly proven; and, that the evidence must be clear and convincing to establish actionable fraud and misrepresentation. All Florida Land Co. v. State ex rel. Thomas Manor, Inc., 1939, 136 Fla. 211, 186 So. 416; Florida Bank & Trust Co. v. Yaffey, 1931, 102 Fla. 723, 136 So. 399.
And in the case of Laffrey v. Detwiler, 1944, 155 Fla. 95, 20 So.2d 338, the Court held that an allegation of fraud must be exactly made and clearly proven; and, in Buscher v. Mangan, Fla. 1952, 59 So.2d 745, that fraud is never presumed but must be proven by clear and convincing evidence. Other cases to this effect are: Biscayne Boulevard Properties, Inc. v. Graham, Fla. 1953, 65 So.2d 858; Middleton v. Plantation Homes, Fla. 1954, 71 So.2d 503; and Graessle v. Schultz, Fla. 1956, 90 So.2d 37.
So it is, the probata fails to support the allegata and the Lower Court made the proper ruling under the circumstances.
Inasmuch as no recovery could be allowed in this action for fraud and deceit because of the failure of proof discussed, it is unnecessary to go into the subordinate and dependent question of the piercing of the corporate veil of some of the defendants.
Accordingly, I would affirm the lower court.