**Karl G. THIELE and Jacqueline G. Thiele, his wife, Plaintiffs,**

v.

**Thomas DAVIDSON, Pauline Davidson, his wife, Stamco Incorporated, a Florida Corporation, and Kent H. Wood, Defendants.**

**No. 75–396–Orl–Civ–R.**

United States District Court,
M. D. Florida,
Orlando Division.

Nov. 16, 1977.

Jerry R. Linscott of Young, Turnbull & Linscott, P.A., Orlando, Fla., for plaintiffs.

John L. Sewell and Robert E. Sheridan of Gurney, Gurney & Handley, P.A., Orlando, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

REED, District Judge.

On the basis of the evidence presented at trial, the court makes the following:

*Findings of Fact*

The plaintiff, Karl Thiele, is a resident of Orlando, Florida. He is a research and development technician at the Martin Company in Orange County, Florida. He is a high school graduate with three years of liberal arts study at the college level.

Since at least 1954, the plaintiff has worked as a skilled technician or mechanic. From 1959 to 1970, he was a vice-president of a Florida based corporation named Ortronix, Inc. His major responsibility at Ortronix was related to the production of prototypes for the Martin Company. Mr. Thiele also held the position of treasurer with Ortronix, Inc., although he did not personally perform the bookkeeping or accounting of the company.

Ortronix, Inc. went through a stock registration while the plaintiff was in its employ. From this experience the plaintiff learned that a registration was necessary for a public sale of stock.

The defendant, Thomas Davidson, was eighty-two years of age in September 1977. He is a part-time resident of Orlando, Florida who retired in 1965. After a sixth grade education, Mr. Davidson started his working career at age eleven as an office boy in a Texas lumber company. In the 1920's, he and another person organized a corporation —Stemco, Inc.—which manufactured and sold an exhaust system and an oil seal for use on heavy trucks.

In 1964, Mr. Davidson sold his interst in Stemco, Inc. to Garlock, Inc. He thereafter served on the board of directors of Garlock, Inc. During this time Garlock's stock was apparently registered under federal law. Mr. Davidson had no direct responsibility in connection with the registration and was not advised as to its legal effect.

The backgrounds of the plaintiff and the defendant Davidson indicate that at all times material to this litigation they were substantially equally knowledgeable of federal and state laws governing the registration of securities.

In June 1972, Mr. Davidson's wife while reading a Dallas newspaper saw a picture of Alfred Kilbey with a story dealing with a truck brake that Mr. Kilbey was developing. Noticing that Kilbey was from Orlando, Florida, Mrs. Davidson pointed out the item to her husband. Thereafter Mr. Davidson telephoned Mr. Kilbey in Orlando and expressed an interest in the brake. Soon thereafter Mr. Davidson and Mr. Kilbey met and traveled from Florida to Fort Worth, Texas, where they conferred with a Mr. Newton—then the president of Mechanics, Inc., a firm involved in the manufacture of the brake which Mr. Kilbey had displayed at the Dallas trade show. Mr. Newton declined any interest in associating Mr. Davidson in the business of Mechanics, Inc.

In August 1972, after the meeting in Fort Worth, Mr. Kilbey set up a meeting in Orlando at Mr. Davidson's home. He invited the plaintiff, Karl Thiele, and Mr. Richard Bowers, a mutual friend of Mr. Thiele and Mr. Kilbey. At this meeting on or about 15 August 1972, the defendant Davidson first met Mr. Thiele and Mr. Bowers.

At the meeting, the defendant Davidson expressed an interest in marketing a brake which Mr. Kilbey had developed. He offered to finance the development of the brake through a loan of personal funds and to utilize his personal contacts with the National Wheel and Rim Association as a means of developing the marketing of the brake. Mr. Davidson proposed further that (1) the loan would be in whatever amount was required to "get the corporation going"; (2) the interest rate would be governed by the lowest prime rate, and (3) the loan would be repaid through the profits of the corporation when it became "profitable" or, if the corporation were sold, through the sale proceeds. It was further proposed that Messrs. Kilbey, Thiele and Bowers would devote their talents to the development of the Kilbey brake and do what ever else was required to move the brake from the design stage to the point where it could be manufactured and marketed.

After this meeting Messers. Thiele, Bowers and Kilbey, without Mr. Davidson being present, consulted an attorney with whom they had had prior dealings, one Howard Anderson. At Mr. Anderson's office, they discussed with him the relative merits of the proposal offered by Mr. Davidson. Consequently, the three technically oriented persons had the opportunity for an attorney's advice on the proposal.

A prototype of the Kilbey brake was tested sometime between the 15th and 31st of August 1972. It failed to perform. Thereafter the plaintiff substantially modified the brake, and at Mr. Davidson's expense a prototype of the Thiele brake was prepared and tested in October 1972. The Thiele brake seemed to offer promise. In November 1972, Mr. Davidson and Mr. Thiele took it to a trade show sponsored by the National Wheel and Rim Association. It was well received by the participants in the show.

Following the trade show, two significant events occurred. The first was another meeting between Messrs. Davidson, Kilbey and Thiele at Mr. Davidson's home in Orlando. This was shortly after the National Wheel and Rim trade show. At the November 1972 meeting, the parties reached what the plaintiff referred to in his testimony as a "meeting of the minds". At that meeting, Mr. Davidson reiterated his offer to fund the development, manufacture and marketing of the Thiele brake by a loan of personal funds in return for which he would receive fifty-one percent of the stock of a corporation thereafter to be formed and used as the business vehicle. Mr. Kilbey and Mr. Thiele, on the other hand, were to devote their time and talents to the development of the brake in return for which they would receive forty-nine percent of the stock. The forty-nine percent was to be divided between them in accordance with their own understanding to which Mr. Davidson was not privy. Mr. Bowers was not at this meeting and was not further involved in the planning of the corporation. The so-called meeting of the minds was never reduced to writing and of course left many details unspecified.

Also in November 1972, Mr. Davidson and Mr. Thiele met and discussed the patentability of the brake. They consulted a patent attorney and commenced a patent application. Concurrently, Mr. Davidson and Mr. Thiele signed an agreement (plaintiff's Exhibit 22) in which Mr. Thiele agreed to assign the contemplated patent to the then contemplated corporation. The agreement was executed on 15 November 1972 and was later replaced by an agreement (plaintiff's Exhibit 23) executed on 11 October 1973, after the corporation was formed under the name Stamco, Incorporated. The patent which issued on 9 April 1974 was assigned to Stamco, Incorporated by Mr. Thiele on 25 January 1974.

After the November 1972 meeting, Mr. Thiele was paid a salary by Mr. Davidson from his personal funds. When Stamco, Incorporated was incorporated in March of 1973, the salary was paid from funds of the corporation which were loaned to it by Mr. Davidson. After November of 1972, Mr. Thiele and Mr. Davidson jointly searched for a plant site and raw materials to be used in the manufacture of the brake. The plant was ultimately located in Alabama.

Sometime after November 1972, Mr. Davidson was introduced to Howard Anderson by either Mr. Kilbey or Mr. Thiele. As a result Mr. Anderson was hired by Mr. Davidson to draft the corporate charter which was filed with the Secretary of State of the State of Florida on 14 March 1973. At that time the proposed corporation became a legal entity under the laws of the State of Florida (plaintiff's Exhibit 2). Mr. Davidson, his wife, and Howard Anderson became the first board of directors, excepting the nominal board named in the charter. Mr. Anderson was later replaced on the board by the defendant Kent H. Wood, a certified public accountant from Creve Coeur, Missouri. Mr. Wood and Mr. Davidson had become acquainted in 1956. Although Mr. Wood became a member of the board of directors of the corporation, he never attended a directors or stockholders' meeting and never participated in the business of the corporation. He did, however, prepare several financial statements for the corpo-

ration at the request of Mr. Davidson based solely on information supplied to him by Mr. Davidson (plaintiff's Exhibits 7 and 25).

The charter of Stamco, Incorporated authorizes one thousand shares of common stock. Mr. Davidson controlled the business affairs. On instructions from Mr. Kilbey and Mr. Thiele, he caused the corporation to issue to Mr. and Mrs. Thiele forty shares of stock representing twenty percent of the then outstanding shares of the stock. It was agreed by Mr. Kilbey and Mr. Thiele that Mr. Kilbey would be entitled to twenty-nine percent of the outstanding stock, although on Mr. Kilbey's request, a certificate for these shares was not issued (plaintiff's Exhibit 14). The Thiele shares were issued on 18 September 1974 and delivered to his attorney by mail on or about 15 October 1974 (plaintiff's Exhibits 5 and 15).

On 6 September 1974, Mr. Davidson caused Mr. Thiele's termination as an employee of Stamco, Incorporated (plaintiff's Exhibit 13). Thereafter, however, Mr. Davidson continued to keep Mr. Thiele and Mr. Kilbey informed as to the operations of the corporation through written notices (plaintiff's Exhibits 10, 11 and 12).

At no point in time during the discussions between Messrs. Kilbey, Thiele and Davidson concerning the formation of the corporation was there any mention of the desirability vel non of a stock registration under either the Florida Securities Act or the federal securities laws. At no time, however, during his dealings with Mr. Davidson did Mr. Thiele desire to have the securities registered, although he knew generally the significance of a registration. When he entered into the agreement with Mr. Davidson and Mr. Kilbey to establish Stamco, Incorporated, Mr. Thiele had no intention of selling his stock. His intent was to use the corporation as a means of employment and exploitation of his invention.

### Conclusions of Law

### Count One

With respect to Count One, the court concludes that the plaintiff has failed to

prove a violation of Rule 10b-5 by any defendant.

The plaintiff has argued to the court that the defendant Davidson violated Rule 10b-5 by (1) failing to tell the plaintiff that the stock in the proposed corporation would not be registered in accordance with the Securities Act of 1933 and the Florida Sale of Securities Law, Chapter 517, F.S.A., and (2) representing to the plaintiff that his contribution to the corporation would be $350,000.00 "in the form of equity capitalization" (paragraphs 11 and 15 of the First Amended Complaint).

The court as a matter of fact has found that the defendant Davidson never represented to the plaintiff that he would contribute $350,000.00 in the form of equity capitalization. The evidence shows that the representation by Mr. Davidson was that he would finance the corporation by loans in whatever amount might be necessary to "get the corporation going".

With respect to the contention that Mr. Davidson failed to inform the plaintiff that the stock would not be registered, it is true that the evidence shows that no such revelation was made. The question remains whether or not such an omission constitutes, under the facts of this case, a violation of Rule 10b-5. Although Rule 10b-5 does not by its language impose a duty to make affirmative representations independent of one's duty to clarify statements expressly made, the Fifth Circuit has held that such an independent duty to speak may exist. See *First Virginia Bankshares v. Benson*, 1977, 559 F.2d 1307.

█ Such a duty is said to depend on the relationship between the parties. In the present case, the facts reveal that the Messrs. Davidson, Thiele and Kilbey were the original organizers of the corporation. That is to say, they jointly developed the idea of incorporation and agreed upon a plan for their several contributions. Each was generally familiar with the fact that registration of securities is an act required by law to facilitate the public distribution of stock. None of the three, however, was intimately familiar with either the Florida or federal securities laws.

At no time prior to the organization of the corporation and the ultimate distribution of the shares to Mr. Thiele, did Mr. Thiele discuss with Mr. Davidson the desirability of registering the securities and, at no time prior to the distribution of the securities to Mr. Thiele did he desire to have his shares registered.

There was, therefore, nothing in the circumstances surrounding the creation of Stamco, Incorporated that put Mr. Davidson or any other interested party on notice that registration of the securities was a matter of interest to Mr. Thiele. On the contrary, Mr. Thiele's testimony indicated that such was not a matter of interest to him. The court, therefore, concludes as a matter of law that there was no duty on Mr. Davidson to inform Mr. Thiele that the stock when issued would not be registered. Consequently the omission did not constitute a breach of any duty imposed under Rule 10b-5.

There are additional reasons why the omission cannot be considered to be a violation of Rule 10b-5. The evidence indicates affirmatively that the plaintiff would have acted no differently had the disclosure been made. As previously mentioned, the plaintiff had no desire to have the securities registered; he joined the corporation without any intention of selling his interest, and his interest in the corporation was basically one of employment and exploitation of his invention. Finally, the evidence indicates no intent by any defendant to deceive Mr. Thiele.

Thus the scienter required for a violation of Rule 10b-5 is lacking.

### Count Two

Under Count Two of the Amended Complaint, the plaintiff argues that the sale of the securities without registration under Florida law was a violation of Section 517.07, F.S.A., which entitled him to rescind the transaction under Section 517.21(1), F.S.A. The defendants counter this argument by insisting that the securities were sold in an

exempt transaction and the statute of limitations has barred plaintiff's claim.

Section 517.07 of the Florida Statutes in effect at the time the stock was transferred in 1974 to the plaintiff, read in pertinent part as follows:

"No securities . . . unless sold in any transaction exempt under any of the provisions of § 517.06 shall be sold within this state unless such securities shall have been registered as hereinafter defined. . . . ."

Section 517.21(1) of the Florida Statutes in effect at that time provided in pertinent part as follows:

"(1) Every sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser; . . . provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale . . . .".

■ The court rejects the argument of the defendants that the statute of limitations which was then embodied in Section 517.21(1) barred the plaintiff's claim. Reading Section 517.21 in pari materia with 517.07, it would appear that a claim for a sale in violation of 517.07 would accrue when the security in question is "sold". Logic dictates the conclusion that a security is not sold until it is delivered, at least when the security takes the form of stock in a closely held corporation. In the present case, the securities purchased by Mr. Thiele were not delivered until sometime on or about 18 September 1974. The present action was commenced well within two years from that date.

The court concludes, however, that the sale of the securities to Mr. Thiele was made in an exempt transaction within the purview of Section 517.06(11), F.S.A. At the time the securities were delivered to Mr. Thiele, that statute provided in pertinent part as follows:

"Except as hereinafter expressly provided, the provisions of this chapter shall not apply to the sale of any security described in any of the following transactions:

.    .    .    .    .

(11) The sale of its securities by a corporation . . . during any period of twelve consecutive months to not more than twenty [20] persons . . . provided that each purchaser prior to the consummation of the sale has been furnished adequate information concerning the true financial condition of the issuer, its business operations, and the use of the proceeds from the sale. . . . Sales shall be made only to persons who purchase for investment purposes only."

■ The burden of establishing this exemption is on the defendants; however, the evidence shows by a preponderance that the transaction in which Mr. Thiele acquired his shares fell within the foregoing provisions. It indicates that at no time has the corporation issued shares to more than twenty persons. The evidence indicates that the only shares that have been issued are those which have been issued to Mr. Thiele and possibly to Mr. Davidson. The court concludes as a mixed question of law and fact that "adequate information" concerning the financial condition of the issuer, its business operation, and the use of the proceeds from the sale was given to Mr. Thiele and all others interested in the corporation. What is "adequate information" under Florida law would necessarily depend upon the relationship which the stock purchaser bore to the operation of the corporation and his access to relevant information. Mr. Thiele knew, prior to acquiring the shares, that its working capital would come in the form of a loan or loans from Mr. Davidson, although the amount of necessity was never specified. The amount was indefinite for the simple reason that at the time the corporation was conceived and organized the cost of its needs was unknown. Mr. Thiele of course knew at all times the purpose of the corporation was to exploit his invention. Thus it would appear to the court that he knew what the capital would be expended for and as a matter of law had that degree of information contemplated by the exemption in Section 517.06(11), F.S.A.

■ Although the defendants have not raised the point by their pleadings, this court is convinced that had this case been tried in a Florida court, it would have held Mr. Thiele estopped where the evidence of estoppel was developed through his testimony and that of witnesses testifying in his case and without objection. See *Bradford Builders, Inc. v. Department of Water and Sewers of City of Miami*, Fla.App.1962, 142 So.2d 137, and Fla.R.Civ.P. 1.190(b). If recission were afforded Mr. Thiele this would allow him to withdraw from the corporation the patent and thus destroy the very purpose of Stamco's existence.

While it cannot be said on the basis of the evidence before the court that Mr. Thiele controlled the day-to-day operations of the corporation, it does appear that his conduct as a member of the incorporating group markedly affected the decision of the group to incorporate. Had Mr. Thiele not been willing to participate with Mr. Davidson and Mr. Kilbey in the organization of the corporation, it is obvious that the corporation would never have been formed since its only purpose was to exploit the invention. Thus Mr. Thiele's decision to participate in the corporation not only caused the formation of the corporation, but also caused Mr. Davidson and Mr. Kilbey markedly to change their positions. Mr. Kilbey took employment with the corporation and Mr. Davidson put several hundred thousand dollars of his own personal funds in the corporation, as well as guaranteed a Small Business Administration loan to finance the plant from which the corporation operates (plaintiff's Exhibits 7 and 18).

■ Under Florida law, where a purchaser of securities in an unregistered corporation controls the activities of the corporation or otherwise acts in a manner which is inconsistent with his claim to recission, the claim may be denied on the theory of estoppel. In the present case, as indicated above, Mr. Thiele's conduct has caused a marked change in position by Mr. Davidson, Mr. Kilbey and the corporation in reliance on the corporate ownership of the Thiele pat-

ent. Therefore, under Florida law Mr. Thiele is estopped from asserting a right to recission. See *Henderson v. Hayden Stone Incorporated*, CA5, 1972, 461 F.2d 1069, 1073; *Dokken v. Minnesota-Ohio Oil Corp.*, Fla.App.1970, 232 So.2d 200, 203, cert. denied, 240 So.2d 638 (Fla.1970), and *Krasny v. Richter*, Fla.App.1968, 211 So.2d 612.

### Count Three

Under Count Three of the Amended Complaint the plaintiff claims a right to recission by virtue of the provisions of Section 517.301 of the Florida Statutes. This statute is the Florida equivalent of Rule 10b-5 and in pertinent part provides:

"It is unlawful, and a violation of the provisions of this chapter, for any person:

(1) In the sale or purchase of any security in this state, . . . directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud;

(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; . . ."

The simple answer to the plaintiff's claim under this statute is that the facts do not show a misrepresentation by any defendant or a failure by any defendant to state a material fact "necessary in order to make the statements made . . . not misleading". The only omission arguably attributable to the defendant Davidson is the omission to advise the plaintiff that the securities would not be registered. For the reasons mentioned above, this omission can neither be considered as material nor necessary to make clear those statements which were in fact made.

### Count Five *

Under Count Five, the plaintiff contends that he is entitled to recovery on the basis of common law fraud. The factual predicate for this claim is the same as that on which the 10b-5 claim is based.

* Count Four has been eliminated by interlocutory order.

Under Florida law, an intentional misrepresentation can provide the predicate for a fraud action. *American International Land Corporation v. Hanna*, Fla.1975, 323 So.2d 567. So too can a truthful representation where further amplification is required to avoid a misunderstanding. See *Vokes v. Arthur Murray, Inc.*, Fla.App.1968, 212 So.2d 906, 909. The facts in the present case, however, indicate that there were no such statements made by the defendants.

The only case in Florida which has concerned itself with the obligation to make an affirmative representation apart from one's duty to clarify or avoid half-truths is *Ramel v. Chasebrook Construction Company*, Fla. App.1961, 135 So.2d 876. In *Ramel* the court held that a duty to disclose may exist where one party does not have equal opportunity to become apprised of the fact withheld. Even under this rule as applied to the facts of the present case, liability could not attach for two reasons. The plaintiff had equal access to the fact allegedly withheld. Secondly, the fact allegedly withheld was not material to the plaintiff's decision to invest.

For the foregoing reasons, the court concludes that the plaintiff has failed to establish a right to relief on any of the theories presented by his complaint.