In the Matter of INTERAIR SERVICES, INC., Debtor.

INTERAIR SERVICES, INC., Plaintiff,

v.

A. Eugene LEWIS, Defendant.

Bankruptcy No. 82–2772.
Adv. No. 83–12.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 7, 1984.

John F. Rudy, II, Tampa, Fla., for plaintiff.

Marlow V. White, Tallahassee, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding which involves two Chapter 11 Debtors, Interair Services, Inc. (Interair) and Alex Matway (Matway), the President of Interair. The Court authorized joint administration of the two Chapter 11 cases because the financial affairs of Interair and Matway have been inextricably interwoven in the past. The instant controversy also involves Coastal Research Transport Company, Ltd., (Coastal) a Florida limited partnership based in Tallahassee, Florida and Eugene Lewis, a general partner of Coastal (neither of which are debtors). A resolution of the present controversy could not be reached without considering the interest of Matway though he is not a nominal plaintiff.

The transaction which forms the basis of the above-captioned adversary proceeding involves the sale of a Bell 206–L–1 Long Ranger Helicopter by Interair to Coastal, a sale negotiated by Matway on behalf of Interair and Lewis, or his agents, on behalf of Coastal. The original action was filed by Interair against Lewis, as a general partner of Coastal in the Circuit Court of the Sixth Judicial Circuit of the State of Florida. This was an action in which Interair sought to recover damages in the amount of $25,000, plus interest, costs and fees for Lewis' failure to pay an installment due under a promissory note executed by Lewis, on December 24, 1981, in connection with the sale. While the cause was still pending in the State Court, Lewis filed an answer, affirmative defenses and a counterclaim against not only Interair but also Matway, individually, alleging misrepresentation regarding the airworthiness of the helicopter involved in the sale. The Counter-claim filed against Matway is somewhat puzzling since Matway was not a Plaintiff in the original suit filed by Interair and it is unclear how Matway became a party litigant in this controversy.

On December 29, 1982, both Interair Services, Inc. and Alex Matway, individually, filed their Voluntary Petitions for Relief pursuant to Chapter 11 of the Bankruptcy Code. On January 6, 1983, both Debtors filed an Application to Remove the state court action to the Bankruptcy Court pursuant to Bankruptcy Rule 9027 which was granted on January 17, 1983.

A duly scheduled pre-trial conference was held and this cause proceeded to final evidentiary hearing. Because it is without dispute that this matter is a "related proceeding," as defined by § (d)(3)(A) of the Emergency Local Rule adopted by the District Court for this District, and which was in effect at the time of the final evidentiary hearing, the parties consented to the entry of a final judgment by this Court pursuant to Emergency Local Rule (d)(3)(B). As noted earlier, at the time that this controversy was tried, the procedure in the Bankruptcy Court was governed by the Emergency Model Rule. However, before this Court was able to prepare a Memorandum Opinion and decide the controversy, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–

353; 98 STAT. 333 (BAFJA). Inasmuch as § 157(c)(2) is essentially identical to the provision of the Emergency Model Rule which governs the procedure for processing "related" matters, and the parties have consented to the entry of an Order by this Court, the Order entered by this Court shall be a final dispositive Order, challengeable only by a timely filed notice of appeal.

The facts germane and relevant to the resolution of this controversy as appear from the record, may be summarized as follows:

In January, 1981, Alex Matway, on behalf of Interair, purchased a new Bell 206–L–1 Long Ranger Helicopter (FAA Registration # N3895K, Serial # 45592) from Bell Helicopter Textron, Dallas, Texas. The helicopter was intended to be used as an air taxi in a charter service. In order to accomplish this, Interair placed the helicopter on a Part 135 Certificate held by Jet America International. Part 135 of the Federal Aviation Administration Regulations (FAA Regs) governs Air Taxi and Commercial Operators and certification under this Regulation, and requires, among other things, that the user submit "operating specifications which specify the manner in which the aircraft will be maintained in order to be considered airworthy."

On January 15, 1981, the FAA inspected the helicopter and certified that the aircraft had met the requirements for the requested certification and scheduled the next annual inspection for January 15, 1982 (Df's Exh. # 3). Thereafter, the helicopter was flown from the factory to the St. Petersburg/Clearwater International Airport where Interair maintained a fixed base operation (i.e. aircraft sales, service and maintenance). On October 31, 1981, the helicopter was given a 100 hour inspection at which time Interair certified both the airworthiness of the craft, and certified that the 100 hour inspection also served as the annual inspection.

Between January 15, 1981, when the aircraft was certified under Part 135 of the FAA Regs, and October 31, 1981, when the 100 hour inspection was performed, the manufacturer of the helicopter issued several "Alert Service Bulletins" (Pl's Exh. # 9) (Df's Exh. # 6). The Bulletins specified certain modifications or improvements suggested to be made to the aircraft and generally set an outside deadline for the completion of the recommended modification. The record reveals that while service bulletins were issued prior to the sale of the helicopter to Coastal and that the modifications recommended in the Service Bulletins were not made prior to the sale, the deadlines for compliance with the recommendations had not expired at the time the helicopter was sold by Interair to Coastal.

It further appears that sometime in mid-1981, Bill Flagg, a representative of the Defendant, Lewis, attended an aviation trade show held on the premises of Interair, and noted the helicopter involved in this controversy. The helicopter had been advertised for sale by Interair as a 1981 model although it was later discovered that the helicopter was in fact the last serial numbered craft to be manufactured in 1980. On December 19, 1981, Lewis and Flagg contacted Interair in order to discuss the potential purchase of the aircraft.

There is no doubt that Flagg discussed the helicopter with Matway in detail and told him that Coastal intended to use the helicopter as an air ambulance. Flagg also inquired regarding certain possible modifications of the helicopter as well as airworthiness directives (modifications mandated by the FAA) and also, Part 135 certification of the helicopter. There is no evidence that Flagg requested any information regarding the Alert Service Bulletins issued by the manufacturer or that he did in fact inspect the helicopter logbooks. Although Matway advised Flagg that an engine modification known as a "six pack" had been done, there is a dispute as to whether Matway also represented the completion of a "twelve pack" modification. Prior to the advisory Bulletin issued by the manufacturer, a six-pack modification was an acceptable process in the maintenance of the helicopter. It appears, however, that an Advisory Bulletin recommended a twelve-

pack modification in order to insure the airworthiness of the craft.

On December 24, 1981, the parties arrived at an agreement, and Lewis, on behalf of Coastal and Matway on behalf of Interair executed a purchase agreement whereby Coastal agreed to purchase the Bell 206–L–1 Long Ranger for the sum of $505,000 plus tax in the amount of $20,200 (Pl's Exh. # 1). Lewis executed a promissory note in the amount of $50,000 payable in two equal installments, the first of which was due on or before January 15, 1982 and the second, on or before February 15, 1982, respectively (Pl's Exh. # 4).

The Purchase Agreement executed on December 24, 1981 contains the following language:

> Purchaser recognizes that it is the custom of the used-airplane retail sales trade that used airplanes are sold *without either an express or implied warranty of merchantability or fitness, and that no such warranties are here made to purchaser. Purchaser agrees to buy the subject airplane "as is."*
>
> The manufacturer's warranties, if they exist and to the extent applicable, are not waived. Any special warranties or representations are hereafter set forth in full and if none appear, then none exist. (Emphasis supplied)

On the reverse side of the Agreement, the following language appears in bold print:

> **5. Purchaser acknowledges that: (a) THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED IN FACT OR BY LAW, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. (b) NO ORAL WARRANTIES OR GUARANTEES OF ANY KIND HAVE BEEN MADE TO PURCHASER BY THE SELLER OR ANY OF ITS AGENTS. (c) SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, EXPRESSED OR IMPLIED REGARDING THE CONDITION OF THE AIRCRAFT; OR AIRFRAME, ENGINE OR ELECTRONIC WORK PERFORMED UPON SAID AIRCRAFT OR COMPONENTS THEREOF; OR THE ACCURACY OF ANY ENTRIES, INFORMATION OR CERTIFICATION CONTAINED IN THE AIRCRAFT LOGBOOKS.**

On January 8, 1982, Coastal paid the first $25,000 installment on the promissory note and shortly thereafter the helicopter was delivered to Coastal and was placed in a vacant lot across from Coastal's offices in Tallahassee, Florida. Coastal attempted to obtain Part 135 certification from the FAA, however, certification was refused because the logbooks of the craft failed to show that the required annual inspection had been timely performed.

In mid-May 1982, Coastal flew the helicopter to Hanger One in Atlanta, Georgia for a 300 hour inspection and for the purpose of having the recommendation of the manufacturers Service Bulletin performed, including the recommendations which were included in the Service Bulletins issued prior to the sale. In June 1983, after 716 hours of use, the engine in the helicopter had to be replaced. Although it appears that the replacement cost was predominantly borne by insurance, the helicopter was temporarily out of service resulting in a financial loss to Coastal. Coastal contends that the engine should have performed for approximately 1,500 hours and that its failure to do so was the result of the Debtor's failure to comply with the recommendations contained in the "Alert Service Bulletins" issued by the manufacturer.

It is Coastal's position that at the very least, Matway negligently represented the condition of the helicopter prior to the sale by representing that the maintenance of the helicopter was in compliance with the service bulletins and by improperly maintaining the service manuals and log books, which if properly maintained would have revealed that the recommended service had not been performed. As a result of the misrepresentation, Coastal contends that it

sustained damages in the total amount of $63,536.

The Debtor admits that he represented that the six pack modification had been performed based on information given to him by a Bell representative. No such admission was made by Matway regarding a representation as to the twelve pack modification or compliance with the Service Bulletins. In addition, the Debtor maintains that at the time of the sale, the craft was, in fact, airworthy, was not yet due for the annual inspection, that none of the service bulletin deadlines had expired and that the craft was sold "as is."

■ In order to prevail on a theory of fraud, the following elements must be plead and proven: A false statement of material fact which is known to be false at the time it was made and was intended to and does, in fact, induce another to act to his detriment in reliance on the correctness of the representation. *Rudy's Glass Construction Co. v. Robins,* 427 So.2d 1051 (Fla. 3d DCA 1983). Of course, a negligent misrepresentation, that is a representation made without knowledge of its truth or falsity, *may* be equated with or deemed tantamount to fraud under the proper circumstances. For example, fraud may be found to exist where a party implies knowledge by making an absolute positive representation about a material matter of which he has no knowledge or, occupies a special situation or such means to possess knowledge, that there arises a duty to know the truth or falsity of the matter. *Joiner v. McCullers,* 158 Fla. 562, 28 So.2d 823 (1947).

■ Finally, nondisclosure of a material fact may be deemed fraudulent where the other party does not have an equal opportunity to discover the material information. *Thiele v. Davidson,* 612 F.2d 578 (5th Cir. 1980). However, where the parties are dealing at arm's length and the facts are equally available to both parties, mere nondisclosure does not rise to the level of fraudulent concealment. *Taylor v. American Honda Motor Co. Inc.,* 555 F.Supp. 59

(M.D.Fla.1982); see also *Ramel v. Chasebrook Construction Co.,* 135 So.2d 876 (Fla. 2d DCA 1961); *accord. Hauben v. Harmon,* 605 F.2d 920 (5th Cir.1979).

■ In addition to proving the existence of a false statement or nondisclosure, it must be shown that the party asserting the fraud was justified under the circumstances, to rely on the representation, that is, the party asserting the fraud must believe that the representation was true and have a right to depend on the representation because (1) he did not have an opportunity to become knowledgeable or, (2) the party making the representations stood in a fiduciary or confidential relationship to the injured party. *See Robson Link & Co. v. Leedy Wheeler & Co.,* 18 So.2d 523 (Fla. 1944).

■ While there is a split of authority in the law of Florida regarding the appropriate standard of proof to be applied in an action for fraud, the better view appears to be that a preponderance of the evidence is required to establish fraud. *Wieczoreck v. H. & H. Builders, Inc.,* 450 So.2d 867 (Fla. 5th DCA 1984); *Sprayberry v. Sheffield Auto and Truck Service, Inc.,* 422 So.2d 1073 (Fla. 1st DCA 1982). In the case at bar, the Court is satisfied that Lewis has failed to carry the burden to establish that Alex Matway, on behalf of Interair, either fraudulently or negligently misrepresented material facts which induced Lewis to purchase the helicopter in justifiable reliance on the representations which resulted in economic damage to Coastal.

First, Lewis failed to establish that the statements or representations made by Matway regarding the Alert Service Bulletins and the Part 135 Certification were in fact false. The representations complained of by Lewis were (1) that the helicopter was in compliance with the outstanding service bulletins issued by the manufacturer and (2) that the helicopter was operating under Part 135 Certification of the FAA Regulations. The record reveals that the

helicopter was in compliance with the service bulletins inasmuch as the deadlines for the suggested modifications had not yet expired on the date of the sale. Further, the record reveals that while the helicopter was owned by Interair, it was operating under Part 135 certification of the F.A.A. Regs.

Lewis contends that Matway also represented, based on information provided by the manufacturer that a "six-pack" engine modification (also the subject of an unexpired Alert Service Bulletin) had been completed; and, that Lewis relied on that representation to the ultimate economic detriment to Coastal. This Court is satisfied that the representation was made without any intent to deceive Lewis or to induce him to enter the contract. Certainly, one would presume that the manufacturer would accurately disclose the mechanical status of its product; and in this instant Matway was in no better position to determine the validity of the representation than was Lewis.

This Court also concludes that Lewis has failed to establish that reliance on any oral representations was justifiable because Lewis and his agents, on behalf of Coastal, had ample opportunity to inspect the helicopter and insist upon completed aircraft records prior to closing. In addition, the contract for sale, on its face, makes it clear that only those representations which are part of the written contract may be relied upon, and that it is the custom in the used retail aircraft market to sell absolutely "as is." Inasmuch as Lewis is an attorney, there can be no doubt that he was aware of the significance of the terms of the contract and cannot now be heard to assert claims of fraud and misrepresentation. Thus, the Court is satisfied that Lewis has failed to carry the burden to sustain his counterclaim and the same shall be dismissed. Likewise, Interair is entitled to judgment on the prime cause of action.

A separate final judgment shall be entered in accordance with the foregoing.